225 So.2d 177 (1969)
John E. WHALEY, Sr. and Minnie Sands Whaley, His Wife, Appellants,
v.
Herbert E. WOTRING, Joseph W. Gantt and Francis H. Gantt, His Wife, Appellees.
No. K-284.
District Court of Appeal of Florida. First District.
July 10, 1969.
Rehearing Denied August 6, 1969.
*178 E.K. McIlrath, Jacksonville, and J.C. Sapp, Green Cove Springs, for appellants.
W.O. Birchfield, of Milam, Ramsay, Martin & Ade, Jacksonville, for appellees.
RAWLS, Judge.
The plaintiffs Mr. and Mrs. Whaley, appeal from a final judgment entered in favor of defendant-counterclaimant, Wotring, in this suit to quiet title to 84.6 acres of land located in Section 18, Township 4 South, Range 26 East, Clay County, Florida.
The primary question presented is whether the trial court erred in finding that Wotring's paper title is superior to the Whaleys' claim of title by reason of its deraignment coupled with possession. The question is answered in the affirmative and the cause is reversed.
Whaley's claim is deraigned from his daughter and son-in-law, the Shaws, who took possession of the property in 1954, completely fenced same and built a house thereon. In December 1956 the Shaws moved away surrendering possession to Whaley who returned same for taxes and paid taxes for the years 1956 through 1963. A family (Gantts) moved into the house in early 1957 and paid rent to Whaley for about eight years. Whaley had the property surveyed in 1957 and again in 1961. The original fence of blackjack post and three strands of barbed wire kept falling down, and in 1961 he replaced it with cypress posts and three strands of barbed wire. In 1961 and 1962 Whaley obtained a deed from the Shaws and quitclaim deeds from the heirs of Charles A. Brown, Jr., the record title holder under a 1908 deed which refered to the property by reference to a previous deed. The effect of these deeds was to give Whaley a chain of title from 1863 to date. The county records contain a notation that a patent was issued by the United States to one Charles E. Sherman on December 1, 1897, pursuant to a certificate dated September 16, 1851, but neither the patent nor the certificate was recorded in Clay County. Thus, the records reflect *179 no connection between the patentee and the first grantor of record.
In late 1964 Wotring who owned neighboring property secured from Gantt, tenant of Whaley, a quitclaim deed and requested the tax assessor to assess the property in his name. About the same time Whaley brought a landlord-tenant suit to evict Gantt and collect his rental arrearages. Wotring paid for Gantt's defense, posted supersedeas bond and paid for the appeal. Gantt was finally evicted late one afternoon. Whaley nailed up the back door and locked the front door. When he returned the next day to let Gantt remove his household goods, Whaley found that someone had broken into the house through a window and was occupying same. The intruder tried to jump out the window but was caught by Wotring's employee-nephew, who demanded that the man stay. The intruder was evicted and Whaley moved into the house.
Whaley brought this action on March 1, 1966, to quiet title. Thereafter Wotring obtained quitclaim deeds from a number of persons who are heirs of a Colonel Charles Elkanah Sherman. These deeds and the patent which were recorded in Clay County in June and July, 1966, are the basis of Wotring's counterclaim to quiet title in himself.
The testimony of one of these heirs, Guy Sherman Paschal, reflects that his great-grandfather, Colonel Charles Elkanah Sherman, practiced law in Tallahassee from about 1828 until about 1847 when, after being disbarred, he moved to Washington, D.C., and resumed his law practice. He died in 1885, twelve years prior to the date the patent on the subject property was issued. The petition for letters of administration of his estate reflect that the Colonel owned no real property but had papers relating to his affairs and those of his clients in a safe-deposit box. His heirs today have a box of papers, some 50 to 75, which reflect that Colonel Sherman has claims valued at $3.5 million against certain properties. When Wotring's nephew approached Paschal to obtain the quitclaim deed, he refused to tell Paschal the full facts, and Paschal refused to sign until his own lawyer checked the description of the subject property to determine if it was part of the properties against which his great-grandfather possessed a claim. After Paschal's attorney assured him that the Colonel had no claim against the property involved, Paschal and his wife signed the deed. Paschal, testifying for the Colonel's heirs, apparently had no knowledge of the patent, and denied that his ancestors had ever had actual possession of the property in question.
The Sherman certificate and patent did not result from homesteading or direct purchase, but were issued pursuant to an assignment from the heirs of Fernando de la Maza Arrendondo, whose concession for 38,000 acres in 1817 was affirmed by an 1850 court decree authorizing the Arrendondo heirs to locate said claim on any lands in Florida which had been offered for public sale. The Sherman patent recites that Sherman was an assignee of 8,250 acres of the Arrendondo claim and describes 6,817 acres which the United States recognized as part of his claim. Sherman's certificate was deposited with the General Land Office in St. Augustine.
There is no evidence as to who procured the issuance of the subject patent in 1897, some twelve years after the death of the Colonel. However, the Clay County records do reflect that on September 1, 1851, Charles E. Sherman for the sum of $1,800.00 conveyed to Henry R. Sadler and his heirs 2,250 acres together with the right to enter upon and locate same in Sherman's name by virtue of his certificate No. 3. This "conveyance" was recorded in Clay County December 18, 1897, just eighteen days after the patent was issued.
Because Wotring's counterclaim alleged that the plaintiffs were in possession, the issues were made up as in ejectment and tried before a jury. The trial judge directed a verdict for Whaley as to adverse possession of that small portion of the property containing the house and garden plot, directed a verdict against Whaley as to adverse *180 possession without color of title as to the remainder of the property and ruled that if the jury found that Colonel Charles Elkanah Sherman was the same man as Charles E. Sherman, the patentee, then Wotring had a better paper title than Whaley to the balance of the property. The jury found for Whaley. The trial court on motion granted a new trial but on petition for rehearing determined that possession was the only issue which should have been submitted to the jury, so it reinstated its directed verdict as to adverse possession of the larger portion of the parcel, found that Wotring's 1966 deeds were from heirs of the patentee and Wotring's paper title was superior to that of Whaley. Final judgment was entered accordingly.
The evidence relative to failure to maintain the fences is sufficient to support the trial court's ruling as a matter of law that Whaley failed to establish adverse possession without color of title as to that part of the property other than the house and garden plot. Thus, the sole question for our determination is whether the lower court erred in vacating the jury verdict and finding that Wotring's paper title is superior to that of Whaley.
The trial judge's pretrial order reflects he took the position that the 1908 deed contained an adequate reference to the property so that Whaley's claim is supported by a continuous chain of record title from 1863 to date. We agree. For a deed to be inadmissible on grounds of insufficiency of description so as to render it void, it must be apparent on its face that the land intended to be conveyed could not be identified and located.[1] Here, the 1908 deed purported to convey those properties covered by a clearly identified deed (giving record book and page number) which had not previously been conveyed by designated trustees. By expert testimony it is shown that the record here contains all recorded instruments affecting this parcel, not one of which was a conveyance of this parcel by either of the trustees. Without belaboring the point we concur with the trial judge in his findings that Whaley had a continuous chain of record title from 1863 to date.
Appellee Wotring vigorously argues that the 1863 deed is a "wild deed," that is, one executed by a stranger to the record title.[2] Here, the Bryans, grantors of the 1863 deed, which was recorded 91 years before the patent was recorded in Clay County, could hardly be called a stranger to the record, since the Bryan chain of title was the only recorded chain for 91 years. The defect in Whaley's title is not that his claim is based upon a wild deed, but that there is a break in the recorded chain from the patentee to the first grantor of record. In this regard it should be noted that of the 6,817 acres assigned to the patentee, he conveyed an undescribed 2,250 acres to another for $1,800.00. Furthermore, Colonel Sherman's heirs have records of $3.5 million of claims but this patent was not among these claims.
Public lands cease to be public and become private lands after they have been entered at a land office and a certificate of entry or patent certificate is issued. At that point such lands are subject to taxation by the state, subject to adverse possession, or assignment of interest. The patent generally issued upon application and presentation of facts indicating to the satisfaction of the Commissioner of the General Land Office that the certificate was fairly obtained.[3] Thus, the actual patent often issued long after the death of the patentee inured to his heirs and assignees, but took effect from the date of confirmation and survey, the date of commencement of proceedings to confirm the original grant from a foreign country, or the date of the survey  depending upon the type of grant, the terms of *181 same and the required confirmation. The patent is in the nature of a quitclaim, passing whatever interest the United States possessed in the premises.[4] It sets at rest any question as to sovereign ownership, but does not necessarily control the rights of litigants inter sese.[5] The patentee may be but a trustee for the true owner.[6]
The appellants contend that Section 95.23 and Chapter 712, the Marketable Record Title Act, prevent the heirs of the patentee from asserting whatever claim they may have under the 1897 patent, if any, due to the fact that the 1908 deed in Whaley's chain of title has been on record for more than thirty years, during which time the heirs of the patentee have failed to assert any claims. This court has held that statutes of limitation, including Section 95.23, are designed to prevent undue delay in bringing suits on claims and to suppress fraudulent and stale claims asserted when all proper vouchers and evidence are lost and after the facts have become obscure from the lapse of time, defective memory, or death and removal of witnesses; Section 95.23 does not purport to validate a deed but operates to prevent one claiming against the deed from asserting its invalidity on the ground of procedural defects or omissions.[7]
The Florida Supreme Court in Reed v. Fain[8] held that Section 95.23, Florida Statutes, F.S.A., does not make valid that which is void. Thus, the recording for over twenty years does not perfect a forged or void deed, that is, one not valid between the parties, but such a deed is subject to attack by one having an interest therein and possessing the proofs to show its invalidity provided the rights of innocent third parties are not involved. Where, however, the proofs of the validity or invalidity are lost by long delay in asserting a claim after a cause of action has accrued to one under no disability to assert it, the statute will operate as a limitation to preclude stale claims and give rise to legal presumptions of such facts as will sanction the possession and protect the possessor.[9]
The 20-year statute does not operate against innocent third parties, but this proviso is no bar in this cause. Wotring purchased by quitclaim deed any interest resting in the Sherman heirs, who disclaimed any interest.
The purpose of Chapter 712, Florida Statutes, F.S.A., the Marketable Record Title Act, is to render marketable any estate in land recorded for thirty years or more and to make same free and clear of any interest arising from a title transaction, act, event, or omission, which occurred prior to the effective date of the root of title. "Root of title" is defined as the last title transaction recorded at least thirty years. All interest arising prior to root of title is declared null and void unless such interest falls within one of those classes specifically excepted. By legislative declaration this act is to be liberally construed to effect the purpose of simplifying and facilitating land title transactions by allowing persons to rely upon a deed recorded for a period of thirty years or more. The Act contains a provision for protecting those claims which it would extinguish. The portions of the Act pertinent here are:
"712.02 * * * Any person having the legal capacity to own land in this state, who, alone or together with his predecessors in title, has been vested with any estate in land of record for thirty years *182 or more, shall have a marketable record title to such estate in said land, which shall be free and clear of all claims except * * *"
"712.03 * * *
"(1) Estates * * * disclosed by and defects inherent in the muniments of title on which said estate is based beginning with the root of title; provided, however, that a general reference in any of such muniments to * * * interests created prior to the root of title shall not be sufficient to preserve them unless specific identification by reference to book and page of record * * * to a recorded title transaction which imposed * * * [such] interests * * *."
Applying this Act to the facts, we find that the patentee's heirs are precluded from asserting any interest in the subject lands. Under Section 712.09 the patentee's heirs had until July 1, 1965, to file notice which would have protected their claim for an additional thirty years. In the absence of such notice, the filing of the heirs' quitclaim deeds in 1966 came too late to assert their interests.
The crux of this case is the application of Section 95.23 and Chapter 712, the Marketable Record Title Act. As of December 1, 1897, the sovereign had by means of a patent divested itself of any claim to the subject land. As of said date, the records of Clay County, Florida, reflected that the subject land was owned by Blake & Benedict, as trustees, claiming through predecessors back to 1863. In 1908 Blake and the heirs of Benedict, by an instrument duly recorded in Clay County, Florida, conveyed the subject land by reference to Charles A. Brown, Jr. This constitutes the critical instrument in this cause, for this deed remained of public record for more than thirty years without being assaulted and, thus, constitutes a valid root of title to support the Whaleys' deraignment. Risking redundancy, we emphasize that in 1908 the sovereign had no claims upon the land; the record reflected no claim upon the part of the patentee Sherman, but to the contrary reflected a long-standing chain of title which neither Sherman nor his heirs or their grantees, if any, had ever questioned. But, irrespective of the transactions prior to 1908, the conveyance into Brown, same not being void, constituted a record claim that ripened with the expiration of time into a valid root of title within the meaning of the cited recording statutes.
We conclude that Section 95.23 and Chapter 712, Florida Statutes, F.S.A., are applicable and preclude Wotring from now asserting his claim. The cause is remanded with directions to quiet title in the Whaleys.
Reversed, with directions.
CARROLL, DONALD K., Acting Chief Judge, and WIGGINTON, J., concur.
NOTES
[1] Walker v. Lee, 51 Fla. 360, 40 So. 881 (Fla. 1906).
[2] Poladian v. Johnson, 85 So.2d 140 (Fla. 1955).
[3] McBee v. Stallworth, 219 Ala. 494, 122 So. 821 (1929).
[4] 50 C.J., Public Lands § 709, 73 C.J.S. Public Lands, § 309.
[5] Tennessee Coal, Iron & R. Co. v. Brewer, 92 F.2d 804 (5th Cir.1937).
[6] Consolidation Coal Co. v. Friedline, 134 Pa.Super. 1, 3 A.2d 200 (1938); See Hagan v. Ellis, 39 Fla. 463, 22 So. 727 (Fla. 1897).
[7] Foremost Properties v. Gladman, 100 So.2d 669 (Fla.App.1st 1958).
[8] Reed v. Fain, 145 So.2d 858 (Fla. 1962).
[9] See Russell v. Stickney, 62 Fla. 569, 56 So. 691 (Fla. 1911).