347 So.2d 622 (1977)
CITY OF MIAMI, a Florida Municipal Corporation, Appellant,
v.
ST. JOE PAPER COMPANY, etc., et al., Appellees.
Nos. 76-423 and 76-686.
District Court of Appeal of Florida, Third District.
May 3, 1977.
*623 Guy B. Bailey, Jr., Miami, for appellant.
Shutts & Bowen and William P. Simmons, Jr. and Eric B. Meyers, Sibley, Giblin, Levenson & Glaser, Steel, Hector & Davis, Miami, Russo, Van Doren & Allen, Coral Gables, for appellees.
Before PEARSON, HAVERFIELD and NATHAN, JJ.
PEARSON, Judge.
The City of Miami appeals a final judgment dismissing its amended complaint as to defendants, St. Joe Paper Company, Hugh E. Matheson, Jr., and Southeast Properties, Inc. The second appeal is from a summary final judgment for defendant Sally S. Dommerich. The City states that the issues are essentially the same on both appeals, which have been consolidated for all appellate purposes. The City's complaint sought "to quiet and confirm title, for ejectment" upon "all or substantial portions" of several lots and tracts, being filled land on the north side of the Miami River at or near the river's entrance into Biscayne Bay.[1]
The controlling question appears to be whether the City's claim is barred by the Marketable Record Title Act, Chapter 712, Florida Statutes (1975). This question must be determined from the allegations of the complaint if it is to be determined, as it was, at the pleading stage. See Stern v. First National Bank of South Miami, 275 So.2d 58 (Fla.3d DCA 1973). We hold that the amended complaint was properly dismissed on this ground.
The allegations of the amended complaint, rearranged chronologically for the purpose of clarity in determining the applicability of the Marketable Record Title Act, are:
1. In 1845, the State of Florida acquired from the United States the lands under navigable waters.
*624 2. By Warranty Deed recorded December 15, 1898, Henry M. Flagler conveyed to the Florida East Coast Hotel Corporation portions of the mainland north of the Miami River and adjacent to Biscayne Bay:[2]
"containing fourteen acres, more or less, together with all and singular the riparian rights and submerged lands appertaining thereto."
3. By a special act of the Florida Legislature on June 2, 1919, the State of Florida granted to the City of Miami "for municipal purposes only, all its rights, title and interest ... to all submerged lands, including waterfront and riparian rights" to an area which included the mouth of the Miami River. The statutory grant included the following section:
* * * * * *
"Sec. 2. That this grant shall not affect any other grant heretofore made to any individual or corporation and nothing herein shall be construed as depriving any riparian owner or proprietor of any rights under the laws of this State."
4. Beginning in 1920, the Florida East Coast Hotel Corporation bulkheaded and filled a portion of the property in question but left a yacht basin.
5. On January 10, 1944, the St. Joe Paper Company (one of the defendants) recorded a warranty deed from the Florida East Coast Hotel Corporation which conveyed to it all of the lands with which we are here concerned including the yacht basins which was then in existence. Recorded with the deed was a map which is reproduced for reference.[*] Some time after 1944, St. Joe filled and bulkheaded the yacht basin.
6. All the defendants other than St. Joe claim under recorded deeds from St. Joe Paper Company subsequent to the 1944 deed to St. Joe Paper Company.
7. On February 3, 1949, St. Joe recorded a plat (attached to the complaint) of the lands involved. This plat was approved by the City of Miami prior to recordation.
The City raises eight points on appeal. The first point urges that the City should have again been given a right to amend its complaint. This point does not present error because the City had once amended its complaint and no new fact in relation to the points on appeal was alleged. In addition, the record does not show a tender or a request to amend.
The second point urges that the area covered by the yacht basin is not protected by the Marketable Record Title Act, even if the act should be held applicable to the remaining area, because the yacht basin was not filled until 1949. This point does not present error because there is nothing within the act which refers to the physical characteristics of the land. If the legislature had intended to exempt unfilled land, it would have been necessary for the legislature to have provided so. See Sawyer v. Modrall, 286 So.2d 610 (Fla.4th DCA 1973); cf. Odom v. Deltona Corporation, 341 So.2d 977 (Fla. 1976).
The third point urges that the trial judge improperly took notice of facts outside the record and applied these facts to find estoppel or waiver of the City's rights. We do not consider this point because our review of the judgment is based entirely upon the record as it has been presented.
The fourth point urges that the "Butler Bill" (the Riparian Rights Act of 1921, Section 271.01, Florida Statutes, which was repealed in 1957) cannot provide an alternative ground for the dismissal of the amended complaint. We do not consider this point in view of our holding herein.
The fifth point urges that the Marketable Record Title Act is inapplicable because the 1948 conveyance was a wild or void deed. This point is not sustainable in view of the holding of the Supreme Court of Florida in Marshall v. Hollywood, Inc., 236 So.2d 114 (Fla. 1970). See also Wilson v. *625 Kelley, 226 So.2d 123 (Fla.2d DCA 1969); and Whaley v. Wotring, 225 So.2d 177 (Fla.1st DCA 1969).
The sixth point urges that the City is exempt from the provisions of the Marketable Record Title Act either as a trustee of the public or as an agency of the State. This position is not sustainable in view of the holding of the Supreme Court of Florida in Odom v. Deltona Corporation, 341 So.2d 977 (Fla. 1976), where the court held:
* * * * * *
"It seems logical to this Court that, when the Legislature enacts a Marketable Title Act, as found at Chapter 712, Florida Statutes, clearing any title having been in existence thirty years or more, the state should conform to the same standard as it requires of its citizens; the claims of the Trustees to beds underlying navigable waters previously conveyed are extinguished by the Act. Stability of titles expressly requires that, when lawfully executed land conveyances are made by public officials to private citizens without reservation of public rights in and to the waters located thereon, a change of personnel among elected state officials should not authorize the government to take from the grantee the rights which have been conveyed previously without appropriate justification and compensation. If the state has conveyed property rights which it now needs, these can be reacquired through eminent domain; otherwise, legal estoppel is applicable and bars the Trustees' claim of ownership, subject to rights specifically reserved in such conveyances."
The seventh point urges that the City is exempt from the provisions of the Marketable Record Title Act by the reason of exceptions embodied in the act. The argument is two pronged: (1) the Act intended to preserve governmental use in land; (2) the City's legislative grant was "for municipal purposes only" and, therefore, the grant was a reservation by the State of the public's rights in the filled property. Neither of these arguments presents error in view of the holdings of the Supreme Court in Odom v. Deltona Corporation, 341 So.2d 977 (Fla. 1976), which held the Act applicable to the State's interest in lands.
The eighth point is as follows:
"Where, as construed and applied, Florida Statute Chapter 712 destroys a constitutionally protected interest, impairs obligations of contracts, permits a void deed to form a root of title, fails to give adequate notice and otherwise deprives a land owner of due process of law, the trial judge erred in holding the act constitutional."
The trial court did not rule upon the constitutionality of the act, but did apply the act as though it were constitutional. We consider the issue to be fundamental and shall, therefore, treat the question as though raised initially on this appeal. See Palm Beach County v. Green, 179 So.2d 356 (Fla. 1965). In order to expedite the ruling on this question, we will certify this decision to the Supreme Court as one passing upon a question of great public interest.
Although the Supreme Court of Florida has not specifically held the Marketable Record Title Act constitutional, it has implicitly done so in Marshall v. Hollywood, Inc., 236 So.2d 114 (Fla. 1970), and Odom v. Deltona Corporation, 341 So.2d 977 (Fla. 1976).
The Marketable Record Title Act extinguishes claims of thirty years or more which conflict with a record chain of title which is at least that old. The act was passed in 1963 and provided the City with ten and one-half years within which it could assert its claim. In view of the length of time provided and the easy way in which the City could have protected its claim, see Section 712.05, Florida Statutes (1975), we find no reason to hold that the act was unconstitutionally applied to the city. Cf. Campbell v. Horne, 147 Fla. 523, 3 So.2d 125 (1941); Mahood v. Bessemer Properties, Inc., 154 Fla. 710, 18 So.2d 775 (1944); Buck v. Triplett, 159 Fla. 771, 32 So.2d 753 (1947); H.K.L. Realty Corporation v. Kirtley, 74 So.2d 876 (Fla. 1954), and In re Brown's Estate, 117 So.2d 478 (Fla. 1960).
Accordingly, the judgments are affirmed.

*626 APPENDIX

NOTES
[1] "20. All or substantial portions of Lots 1 through 10, inclusive, of Block 3; Lots 7 and 8 of Block 5; Lots A and B of Block 1; and all of Tracts C and D of the said plat of DuPont Plaza, were irrevocably conveyed by the State of Florida to Miami in its grant of June 2, 1919, and Miami owns of right title and interest thereto in fee simple absolute, subject only to the requirement that they be used for municipal purposes only."
[2] A map attached to this deed is included as an exhibit to the amended complaint. It shows that Flagler intended to convey all the land east of "Mrs. J.D. Tuttle's Home Reservation."
[*] See Appendix.