364 So.2d 439 (1978)
CITY OF MIAMI, a Florida Corporation, Petitioner,
v.
ST. JOE PAPER COMPANY, a Florida Corporation, Southeast Properties, Inc., a Florida Corporation, Hugh E. Matheson, Jr., Individually, and Sally S. Dommerich, Formerly Sally S. Matheson, Individually, Respondents.
No. 51775.
Supreme Court of Florida.
October 5, 1978.
Rehearing Denied December 14, 1978.
*441 Guy B. Bailey, Jr. and Jesse C. Jones of Bailey & Dawes, Miami, for petitioner.
Wm. P. Simmons, Jr. and Eric B. Meyers of Shutts & Bowen, Miami, and Marion E. Sibley of Sibley, Giblin, Levenson & Glaser, Miami Beach, for St. Joe Paper Co.
Joseph P. Klock, Jr. of Steel, Hector & Davis, Miami, for Southeast Properties, Inc.
Edmund P. Russo of Russo, Van Doren & Allen, Coral Gables, for Hugh E. Matheson, Jr.
Nancy G. Linnan, Asst. Gen. Counsel, and J. Kendrick Tucker, Asst. Atty. Gen., Tallahassee for Reubin O'D. Askew, as Governor of the State of Florida.
Robert L. Shevin, Atty. Gen. of Florida, amicus curiae.
Chesterfield Smith, Tallahassee, Julian Clarkson, Fort Myers, of Holland & Knight, Tallahassee, for amicus curiae.
J. Richard Harris of Scott, Burk, Royce, Harris & Loucks, Palm Beach, for The Florida Bar, amicus curiae.
ADKINS, Justice.
This cause is here on petition for writ of certiorari supported by certificate of the District Court of Appeal, Third District, that its decision reported in 347 So.2d 622 is one which involves a question of great public interest. We have jurisdiction. See Florida Constitution, Article V, Section 3(b)(3).
Petitioner has attacked the constitutionality of Florida Statutes, Chapter 712, the Marketable Record Title Act. Also involved in this case is the question of whether an interloping or wild deed could constitute a root of title.
*442 Petitioner, hereinafter referred to as the city, filed a complaint to quiet its title to a tract of land on the north side of the Miami River at or near the river's entrance into Biscayne Bay. Upon motion, the amended complaint was dismissed on the ground that it appeared upon the face of the complaint that the city's claim was barred by the Marketable Record Title Act. The District Court of Appeal, in its opinion, recited the following history of the title, as described in the city's complaint:
"... 1. In 1845, the State of Florida acquired from the United States the lands under navigable waters.
"2. By Warranty Deed recorded December 15, 1898, Henry M. Flagler conveyed to the Florida East Coast Hotel Corporation portions of the mainland north of the Miami River and adjacent to Biscayne Bay:
`containing fourteen acres, more or less, together with all and singular the riparian rights and submerged lands appertaining thereto.'
"3. By a special act of the Florida Legislature on June 2, 1919, the State of Florida granted to the City of Miami `for municipal purposes only, all its rights, title and interest ... to all submerged lands, including waterfront and riparian rights' to an area which included the mouth of the Miami River. The statutory grant included the following section:
* * * * * *
"`Sec. 2. That this grant shall not affect any other grant heretofore made to any individual or corporation and nothing herein shall be construed as depriving any riparian owner or proprietor of any rights under the laws of this State.'
"4. Beginning in 1920, the Florida East Coast Hotel Corporation bulkheaded and filled a portion of the property in question but left a yacht basin.
"5. On January 10, 1944, the St. Joe Paper Company (one of the defendants) recorded a warranty deed from the Florida East Coast Hotel Corporation which conveyed to it all of the lands with which we are here concerned including the yacht basin which was then in existence. * * * Some time after 1944, St. Joe filled and bulkheaded the yacht basin.
"6. All the defendants other than St. Joe claim under recorded deeds from St. Joe Paper Company subsequent to the 1944 deed to St. Joe Paper Company.
"7. On February 3, 1949, St. Joe recorded a plat (attached to the complaint) of the lands involved. This plat was approved by the City of Miami prior to recordation." 347 So.2d at 623 (Fla. 1977).
The Marketable Record Title Act is a comprehensive plan for reform in conveyancing procedures. It is a curative act in that it may operate to correct certain defects which have arisen in the execution of instruments in the chain of title. Curative statutes reach back on past events to correct errors or irregularities and to render valid and effective attempted acts which would be otherwise ineffective for the purpose the parties intended. They operate to complete a transaction which the parties intended to accomplish but carried out imperfectly.
The Marketable Record Title Act is also a statute of limitations in that it requires stale demands to be asserted within a reasonable time after a cause of action has accrued. It prescribes a period within which a right may be enforced.
The Marketable Record Title Act is also a recording act in that it provides for a simple and easy method by which the owner of an existing old interest may preserve it. If he fails to take the step of filing the notice as provided, he has only himself to blame if his interest is extinguished. The legislature did not intend to arbitrarily wipe out old claims and interests without affording a means of preserving them and giving a reasonable period of time within which to take the necessary steps to accomplish that purpose.
This court in Mahood v. Bessemer Properties, Inc., 154 Fla. 710, 18 So.2d 775 (1944), held that the legislature may legitimately use a recording statute as a means of getting *443 rid of stale claims. Florida Statutes 695.20, enacted in 1941, voided contracts for the purchase of lands which were left by the collapse of the Florida Real Estate boom of the 1920's. Under the terms of the statute, persons who had contracted to purchase land prior to a certain date, but had not placed a deed on record or obtained a decree and were not in possession, were declared to have no interest in the land unless they had given notice of their claims by recordation in one of several ways specified and within six months from the adoption of the statute.
Catsman, the Marketable Record Title Act and Uniform Title Standards, Volume 3, Florida Real Property Practice (1965) Section 6.2 describes the nature of the act as follows:
"The chief purpose of the act is to extinguish stale claims and ancient defects against the title to real property, and, accordingly, limit the period of search. The act is different from a statute of limitations. In a statute of limitations a claim of a vested, present interest is cut off because of the claimant's failure to sue. If suit is not filed, the claim is lost. By the Marketable Record Title Act, any claim or interest, vested or contingent, present or future, is cut off unless the claimant preserves his claim by filing a notice within a 30-year period. See § 6.5. If a notice is not filed, the claim is lost. The act also goes beyond a curative act. Curative legislation only corrects certain minor or technical defects through the passage of time, whereas under the Marketable Record Title Act, most defects or clouds on title beyond the period of 30 years are removed and the purchaser is made secure in his transaction."
This court has acknowledged the constitutionality of the act in Marshall v. Hollywood, Inc., 236 So.2d 114 (Fla. 1970), and Odom v. Deltona Corporation, 341 So.2d 977 (Fla. 1976). We now specifically hold that the Marketable Record Title Act is constitutional.
Courts of other states have ruled that similar marketable title acts are constitutional. See Wichelman v. Messner, 250 Minn. 88, 83 N.W.2d 800 (1957) (in depth discussion of the Act's constitutionality); Tesdell v. Hanes, 248 Iowa 742, 82 N.W.2d 119, 123 (1957) ("We are satisfied the legislature had ample authority to enact a limitation ... subject to a condition that a reasonable time must elapse before it becomes effective."); Lane v. Traveler's Insurance Company, 230 Iowa 973, 299 N.W. 553, 555 (1941) ("little doubt of the desirability of statutes giving greater effect and stability to record titles.") See also discussion in Note, Constitutionality of Market Title Legislation, 47 Iowa L.Rev. 413, 428-29 (1962).
Other decisions by this court upholding the constitutionality of similar legislative enactments make it clear that the Act can constitutionally be applied to bar the city's claim. In Mahood v. Bessemer Properties, Inc., supra, this court upheld the constitutionality of the application, to a purchaser under a 1925 contract, of a 1941 act which removed from titles to realty the clouds of unperformed contracts of record unless suit be brought within six months. In In Re Estate of Brown, 117 So.2d 478 (Fla. 1960), this court held constitutional the application, to a claim arising before its passage, of a 1953 statute which barred claims against an estate after three years. In H.K.L. Realty Corporation v. Kirtley, 74 So.2d 876 (Fla. 1954), this court upheld the constitutionality of the application of a twenty-year statute of limitations to mortgages on a given date after one year from such given date on the ground that a reasonable time is provided for the enforcement of a cause of action before the restriction becomes effective. See Buck v. Triplett, 159 Fla. 772, 32 So.2d 753, 754-55 (1947) where the court said:
"We are committed to the rule that statutes of this nature [statute of limitations] are good where a reasonable time is allowed to prosecute an asserted right."
and Campbell v. Horne, 147 Fla. 523, 3 So.2d 125, 126 (1941) where the court said:
"The law is well settled by decisions of the Supreme Court of the United States *444 and in other jurisdictions, that statutes of limitation affecting existing rights are not unconstitutional if a reasonable time is given for the enforcement of the right before the bar takes effect."
The city contends that the application of the Act to bar its claim violates the due process clause of the Fourteenth Amendment to the Constitution of the United States.
Although it is a most important limitation on state action, due process has never been an absolute prohibition against state legislation adversely affecting property rights. It has been held over and over again that general limitations on state action do not extinguish the state's police power to enact legislation "reasonably necessary to secure the health, safety, good order, comfort or general welfare of the community." See Atlantic Coast Line Railroad v. Goldsboro, 232 U.S. 548, 558, 34 S.Ct. 364, 368, 58 L.Ed. 721 (1914).
In determining whether state action violates due process principles, a court must choose between protecting the individual's guaranteed rights on one hand and the welfare of the general public on the other. This method of determining whether a state meets the requirements of due process is called the "balancing of interest" test. See Simes & Taylor, The Improvement of Conveyancing by Legislation, 255-56 (1960).
The Marketable Record Title Act, designed to simplify conveyances of real property, stabilize titles and give certainty to land ownership, is certainly legislation concerning the welfare of the public. See Chicago Burlington & Quincy Railroad Company v. Illinois, 200 U.S. 561, 592, 23 S.Ct. 341, 50 L.Ed. 596 (1906).
The city contends, however, that the retroactive nature of the Act makes it an arbitrary and unreasonable exercise of police power. But retroactive statutes have been almost universally declared constitutional when a reasonable time was given to protect property interests by complying with the new requirements. Atchafalaya Land Co. v. F.B. Williams Cypress Co., 258 U.S. 190, 42 S.Ct. 284, 66 L.Ed. 559 (1922); Wheeler v. Jackson, 137 U.S. 245, 11 S.Ct. 76, 34 L.Ed. 659 (1890); Vance v. Vance, 108 U.S. 514, 2 S.Ct. 854, 27 L.Ed. 808 (1883).
Thus, the constitutional objection that retroactive application of a statute results in a deprivation of due process is obviated where the statute gives owners of old claims still enforceable at the time of the statutory enactment a reasonable time to take certain steps to preserve their interests.
For example, in Vance v. Vance, supra, the constitution of Louisiana was amended in April, 1868, to provide that "`the tacit mortgages and privileges now existing in the state shall cease to have effect against third persons after the first of January, 1870, unless duly recorded'." Despite the retroactive effect of the statute in barring property rights conveyed prior to the enactment of the statute, the court held that the statutory limitation affecting those existing rights was constitutional. The court reasoned that such retroactive application was not prohibited by the due process clause of the Fourteenth Amendment because a reasonable time was given for the enforcement of the action before the bar took place.
Indeed, in Wichelman v. Messner, supra, the Minnesota Marketable Record Title Act was attacked on the very ground that its retroactive features violated due process of law. In upholding the Minnesota Act as a proper retroactive recording act the Supreme Court of Minnesota held:
"The recordation provisions of the act provide for a simple and easy method by which the owner of an existing old interest may preserve it. If he fails to take the step of filing the notice as provided, he has himself to blame if his interest is extinguished. `The constitutionality of imposing this duty would seem to have been settled beyond question by the decisions sustaining retroactive recording statutes.' Scurlock, Retroactive Legislation Affecting Interest in Land, Mich. Legal Studies, p. 82; Klasen v. Thompson *445 supra [189 Minn. 254, 248 N.W. 817]." 83 N.W.2d at 817.
Two Iowa cases have similarly upheld the validity of the Iowa Marketable Record Title Act as against the same ground of attack. Tesdell v. Hanes, supra; Lane v. Traveler's Ins. Co., supra.
We are not confronted with the question of whether the Marketable Record Title Act can be utilized to divest the people of the State of Florida of sovereign lands held in public trust for them. This case is not similar to Odom v. Deltona Corporation, 341 So.2d 977 (Fla. 1977), where the Trustees of the Internal Improvement Fund without any notice to the public conveyed certain properties. In the case sub judice, the Legislature did not lose control of lands "irrevocably vested" in the trustees, Trustees of Internal Improvement Fund v. Root, 59 Fla. 648, 51 So. 535 (1910), so the grant to the city was effective. The validity of Chapter 8305, Special Acts of 1919, has been recognized by the Trustees of the Internal Improvement Fund. Trustees of Internal Improvement Fund v. Claughton, 86 So.2d 775, 785 (1956).
The Special Act granted to the city "for municipal purposes only" all of the state's "right, title and interest insofar as the same can be granted, to all submerged lands, including water front and riparian rights." The provision that the grant was "for municipal purposes only" was not a reservation or exception, as nothing was severed from that which was granted. See City of Jacksonville v. Shaffer, 107 Fla. 367, 144 So. 888 (1932). This provision is a restriction on the use of the property and does not fall within the category of true easements. See Moore v. Stevens, 90 Fla. 879, 106 So. 901, 43 A.L.R. 1127 (1925).
We next consider the question of whether the Marketable Record Title Act applies so as to bar claims of title in the subject property where it was previously held in public trust by the state, but later conveyed to the city. The city contends that certain exceptions in Florida Statutes, Section 712.04, prevent the application of the Marketable Record Title Act to the city's claim. This statute reads as follows:
"Subject to the matters stated in § 712.03, such marketable record title shall be free and clear of all estates, interests, claims or charges whatsoever, the existence of which depends upon any act, title transaction, event or omission that occurred prior to the effective date of the root of title. All such estates, interests, claims or charges, however denominated, whether such estates, interests, claims or charges are or appear to be held or asserted by a person sui juris or under a disability, whether such person is within or without the state, whether such person is natural or corporate, or is private or governmental, are hereby declared to be null and void, except that this chapter shall not be deemed to affect any right, title or interest of the United States, Florida or any of its officers, boards, commissions or other agencies reserved in the patent or deed by which the United States, Florida or any of its agencies parted with title." (emphasis supplied).
The city says that it is an agency of the State of Florida and thereby stands in the place of the state. The language of this section discloses a sharp distinction between the rights of the state and those of municipalities. Under this section a reservation of an "interest in the state" is protected when expressly set forth in a conveyance from the state. The interest of a municipality is the same as that of any other person and may be extinguished by operation of the act. The term agency (as contained in this section) does not include municipalities for Section 712.01(1) Florida Statutes, defining terms used in the act, contains the following:
"The term person as used herein denotes singular or plural, natural or corporate, private or governmental, including the state and any political subdivision or agency thereof as the context for the use thereof requires or denotes."
The city argues that its claim was not barred by the Marketable Record Title Act because the root of title relied on by St. *446 Joe (i.e., the deed to it from Florida East Coast Hotel Corporation) is a wild deed. St. Joe counters with the argument that Florida East Coast Hotel Corporation acquired title by conveyance from Henry M. Flagler; therefore, St. Joe's root of title was not a wild deed. St. Joe relies upon Marshall v. Hollywood, Inc., supra, where Atlantic Beach Corporation, with Marshall as majority stockholder, acquired title to the real property in controversy in 1913. In 1924 a forged deed purported to convey the same property to defendant's predecessors. The defendant, Hollywood, Inc., claimed under a 1931 deed. The disputed land had remained wild, unimproved, and vacant. It was held that the trial court properly dismissed the complaint. Although the deed initiating the chain of title under which defendant claimed was forged and void, this deed formed but one link in the chain predating the effective root of title. The District Court of Appeal (Marshall v. Hollywood, Inc., supra,) affirmed the judgment dismissing the complaint with prejudice and certified its decision to this court as being one which passed upon a question of great public interest. We approved the decision of the District Court of Appeal, saying:
"... Claims arising out of transactions, whether based upon forgeries or not, predating the effective roots of title are extinguished by operation of the Act unless claimants can come in under any of the specified exceptions to the Act. In this case, petitioner fails to qualify under any of the exceptions to the Act, and, therefore, petitioner's claims are barred.
"4. The certified question involved in this cause was, in effect, whether the Marketable Record Titles to Real Property Act, Ch. 712, F.S. confers marketability to a chain of title arising out of a forged or wild deed, so long as the strict requirements of the Act are met. This question is answered in the affirmative." Marshall v. Hollywood, Inc., 236 So.2d 114, 120.
In Whaley v. Wotring, 225 So.2d 177 (Fla. 1st DCA 1969), plaintiff's chain of title was based on his predecessor's 1908 deed, while defendant's root of title was a land patent issued in 1897. The court applied the Marketable Record Title Act and held that the patentee's heirs were precluded from asserting whatever claim, if any, they had under the 1897 land patent, since the 1908 deed in plaintiff's chain of title had been on record for more than thirty years. The court in its opinion said:
"The purpose of Chapter 712, Florida Statutes, F.S.A., the Marketable Record Title Act, is to render marketable any estate in land recorded for thirty years or more and to make same free and clear of any interest arising from a title transaction, act, event, or omission, which occurred prior to the effective date of the root of title. `Root of Title' is defined as the last title transaction recorded at least thirty years. All interest arising prior to root of title is declared null and void unless such interest falls within one of those classes specifically excepted. By legislative declaration this act is to be liberally construed to effect the purpose of simplifying and facilitating land title transactions by allowing persons to rely upon a deed recorded for a period of thirty years or more. The Act contains a provision for protecting those claims which it would extinguish." 225 So.2d at 181.
In Wilson v. Kelley, 226 So.2d 123 (Fla. 2d DCA 1969), the plaintiffs contended that an instrument could not qualify as a root of title within the contemplation of the Act unless it constitutes part of the chain of title emanating from the sovereign. In rejecting this contention the court said:
"... To hold as suggested by plaintiffs would frustrate the Act's intended beneficial effects, and the Act's utility would largely be confined to the elimination of ancient use restrictions and to the curing of formal irregularities, a function already performed by other statutes and usually more quickly than the marketable title act.
"The Act, as a marketable title act, is not concerned with the quality of the title conveyed by the root of title so long as the root purports to convey the estate *447 claimed. This can be so even though a deed is not part of the chain of title emanating from the sovereign and is therefore often called an `interloping' or `wild' deed. It can, under the marketable title acts, form a root of title which may eventually cut off the interest of a person who might otherwise have a claim. Therefore, a marketable title act can cure a break in the chain of title, if the break is sufficiently old." 226 So.2d at 127.
Unquestionably the deed from Flagler to Florida East Coast Hotel Corporation was a wild deed. The effective root of title was the deed from Florida East Coast Hotel Corporation to St. Joe Paper Company on January 10, 1944, and the wild deed was merely a link in a chain commencing before the effective root of title. The claim of the city would be barred under the reasoning in Marshall v. Hollywood, Inc., supra.
However, the city says that Florida East Coast Hotel Corporation did not have title to the submerged lands. The city argues that the conveyance of 14 acres "together with all and singular, the riparian rights and submerged lands appertaining thereto" was ineffective so that Florida East Coast Hotel Corporation held record title to nothing more than the initial 14 acres. To say otherwise, the city contends, would result in Florida East Coast Hotel Corporation holding title by a wild deed to the Atlantic Ocean bottom. St. Joe contends that this is immaterial, for the deed from Florida East Coast Hotel Corporation to St. Joe on January 10, 1944, could constitute the root of title even though this conveyance may be classified as a wild deed. Florida East Coast Hotel Corporation bulkheaded and filled a portion of the property in question in 1920, but left a yacht basin. The deed to St. Joe conveyed all of the lands involved and, after 1944, St. Joe filled and bulkheaded the yacht basin. We are asked to hold, without equivocation, that a wild deed may constitute a root of title. We so hold.
The city argues that a wild deed is void and passes no interest whatsoever in the land. This being so, the city contends that a wild deed cannot be the foundation for a vested estate that would fall under the protection of the Act. The city states that the Act requires that there be a "root of title" which involves a "title transaction." A "title transaction" is defined by Florida Statutes, Section 712.01(3) as one which affects title. The city contends that a wild deed does not affect title.
This court, as well as the First, Second and Fourth District Courts of Appeal have made it clear that the Marketable Record Title Act deviates from common law and prior statutes and, by dicta, have said that a wild deed, properly executed and recorded, may establish a new and valid title after 30 years. Marshall v. Hollywood, supra; Whaley v. Wortring, supra; Wilson v. Kelley, supra.
This court in ITT Rayonier, Inc., v. Wadsworth, 346 So.2d 1004 (Fla. 1977) rejected the argument that only a valid deed could act as a root of title. In this decision the terms "root of title" and "title transaction" were construed as follows:
"... It should be obvious that the deed `purports' to create or transfer an estate. Purport is defined in Webster's 3d New International Dictionary, unabridged (1962), as `profess outwardly: have the often specious appearance of being.' Certainly the Legislature intended the word `purport' to have its accepted meaning. The 1937 deed meets that meaning.
"The deed `affects title' and, in turn, is a title transaction as those terms have been construed in Florida. In Marshall v. Hollywood, Inc., 224 So.2d 743 (Fla. 4th DCA 1969), the Fourth District Court, speaking through Judge Reed, stated at page 749:
`The word "affecting" as it is used in the second sentence of Section 712.02 in the clause "affecting the title to the land" does not carry the narrow meaning of "changing or altering". The word is used in the broader sense meaning "concerning" or "producing an effect upon". In this broad sense, even a void instrument of record "affects" land titles by casting a cloud or doubt *448 thereon. Clements v. Henderson, 1915, 70 Fla. 260, 70 So. 439; Brown v. Solary, 1896, 37 Fla. 102, 19 So. 161'." 346 So.2d at 1010.
In this case it appeared that Wadsworth, Sr., died in 1930 possessed of homestead property and survived by his widow and four children. The statute governing the descent of homestead provided that the surviving spouse would receive a life estate in the homestead property subject to vested remainders in any children. In 1937 Mrs. Wadsworth, the surviving spouse, executed a deed conveying the entire fee simple to herself and her son as tenants in common. In 1942 Mrs. Wadsworth and her son conveyed the property to Rayonier. Rayonier claimed a Marketable Record Title free and clear of the children's vested remainder since that interest arose prior to the 1937 root of title.
The children argued that Florida Statutes, Section 712.03(1) preserves estates, interests, easements, and use restrictions disclosed by and defects inherent in the muniments of title on which the estate is based, beginning with the root of title. The children said that this statute preserved their interest because the 1937 deed had two inherent defects: 1) it conveyed their remainder interest and, 2) it conveyed property from Mrs. Wadsworth to herself. These arguments were rejected because the term "defects inherent in the muniments of title" do not refer to defects or failures in the transmission of title, but refer to defects in the makeup or constitution of the deed on which the transmission of title depends. The children's arguments were geared to defects in the transmission and there was nothing on the face of the deed to indicate that it conveyed the children's remainder interest, so those interests were not saved from extinguishment.
The 1944 deed to St. Joe purported to create an estate and qualified as a "root of title." The city gains no help from the provisions of Florida Statutes, Section 712.03(1) because there was nothing on the face of the deed to indicate that it conveyed any interest of the city. This court made it clear that Florida Statutes, Section 712.03(1) refers only to defects in the makeup of the deed when we said:
"Section 712.03, Florida Statutes, provides that marketable record title will not extinguish six categories of rights that predate the root of title. The first of them, found in subsection (1), is `estates or interests, easements and use restrictions disclosed by and defects inherent in the muniments of title on which said estate is based beginning with the root of title.' The children argue that their remainder interests are within the first category because the 1937 deed has two inherent defects: (1) it conveyed their remainder interests and (2) it conveyed property from Lotta to herself. The phrasing of their argument shows a misunderstanding of the statute. As the Fourth District Court of Appeal stated in Marshall:

`The terms "defects inherent in the muniments of title" do not refer to defects or failures in the transmission of title, as the plaintiffs argument suggests, but refer to defects in the make up or constitution of the deed or other muniments of title on which such transmission depends'." 224 So.2d 743 at 751.
"The face of the deed does not reflect the defect of a conveyance from Lotta to herself." ITT Rayonier, Inc., v. Wadsworth, supra, at 1010.
The 1944 deed to St. Joe does not reflect that it was a wild deed nor does it appear that there is any defect in the makeup of the deed. This wild deed may properly constitute a "root of title."
The city also implies that the Marketable Record Title Act operates as a means whereby people can steal land. Florida Statutes, Section 712.03(6) excepts the rights of any person in whose name the land has been assessed on county tax rolls for a period of three years. This section of the statute requires that owners of land pay their taxes and by doing so, would stop any party from pirating their land. Moreover, an interest in land can be preserved by any *449 party by filing a notice within the 30-year period subsequent to the root of title in accordance with Section 712.05, Florida Statutes.
The court in Wilson v. Kelly, supra, also noted the safeguards which would prevent an interloping deed from cutting off another person's deserving interest in favor of an undeserving person. In this case the court said:
"For those who are concerned with the likelihood that the Act will allow an interloping deed to cut off another person's deserving interest in favor of an undeserving person, there are safeguards in the Act to prevent this from happening. A claimant will not be cut off if he has been a party to any title transaction recorded within a period of not less than thirty years or if he files a simple notice prescribed by the Act during the time allowed for this purpose. He will not be cut off if he remains in possession or if the land is assessed to him on the tax roll. Even if it is no longer assessed to him he is protected if it was assessed to him at any time during the preceding three years. But if he has been a party to no title transaction recorded for at least thirty years during which time he has also failed to file the notice, and if for more than three years he has allowed the land to be assessed for taxation to someone else, and if neither he nor any person claiming under him is in possession of the land, it would not seem unjust that his claim should be subordinate to another person's claim that is based upon a chain of title going back to an instrument or court proceeding that has been recorded at least thirty years, and that `purports to create or transfer the estate' claimed by the second person. In the public interest of simplifying and facilitating land title transactions, it does not seem unreasonable for the legislature to create a presumption that one who is negligent in claiming his land has abandoned his claim." 226 So.2d at 127.
In summary we point out that the question of whether the Marketable Record Title Act can be utilized to divest the state of sovereign land is not considered, as it is not an issue in the case. By this opinion we hold:
1) The Marketable Record Title Act is constitutional;
2) The city is not an agency of the state and does not stand in the place of the state in the application of the provisions of the Marketable Record Title Act;
3) A wild or interloping deed may constitute a root of title.
The decision of the District Court of Appeal, as well as the opinion expressing the views of the court, are approved. The writ of certiorari is discharged.
ENGLAND, C.J., and BOYD, OVERTON, SUNDBERG, HATCHETT and ALDERMAN, JJ., concur.