286 So.2d 610 (1973)
Frank SAWYER, Appellant,
v.
John MODRALL, Appellee.
No. 72-1193.
District Court of Appeal of Florida, Fourth District.
November 23, 1973.
Rehearing Denied January 11, 1974.
*611 F. Kendall Slinkman, of Farish & Farish, West Palm Beach, and Ray C. Osborne, Boca Raton, for appellant.
W.T. Nolan and William Hallman, of Hallman & Meeker, Boca Raton, for appellee.
WALDEN, Judge.
Plaintiff, Frank Sawyer, appeals from a final judgment denying his request for an injunction and damages. We reverse.
Plaintiff and defendant, John Modrall, own adjoining property fronting on the intracoastal waterway in Boca Raton. The lands claimed by plaintiff (the portion in controversy) are primarily under water of varying depths. They are contiguous to the intracoastal waterway, located directly north of defendant's property. Plaintiff derives his title from a deed dated September 24, 1890, from the Florida Trustees of the Internal Improvement Fund to the Florida Coast Line Canal and Transportation Co., conveying an aggregate of 345,971.8 acres of land. He owns approximately four acres of that originally conveyed property.
As conceded by defendant, part of the width of his seawall overlapped the boundary line between the parties' property, thus encroaching on plaintiff's submerged property. His dock was constructed along and north of the seawall and he had operated his boat over the waters covering the lands claimed by plaintiff, as had other members of the public. Plaintiff brought suit against defendant seeking an injunction restraining defendant from his continuous entry on plaintiff's property and the waters flowing over them and for damages incurred as a result of defendant's continuing trespass. Defendant asserted as an affirmative defense that plaintiff did not have title to the land he claimed, so that defendant's dock, boat landing and seawall were located upon sovereignty land, to which he and the public had a right of use.
The basic issue at trial was whether plaintiff had fee simple title to the lands underlying the waters by virtue of the 1890 deed, or whether title had remained in the State of Florida. Both sides presented evidence at trial regarding the condition of the land when title was conveyed from the Trustees of the Internal Improvement Fund.
Final judgment was entered for defendant, concluding:
"(a) At the time of the purported conveyance from the Trustees of the Internal Improvement Fund to Florida Coast Line and Transportation Company, Plaintiff's predecessor in title, that part of the land consisting of submerged coastal marshland was sovereignty land and was not legally alienable by the Trustees."
It was determined, since the plaintiff did not have valid title to the lands in question, he lacked standing to bring the action. He was denied relief and the complaint dismissed.
Plaintiff presents several points on appeal. However, the reframed dispositive *612 question  the only matter that merits discussion  is whether the marketable record title act, found in Chapter 712, F.S. 1971, F.S.A., operated to quiet plaintiff's title and, particularly, whether the 1890 deed from the Trustees fit an exception delineated in Section 712.04, F.S. 1971, F.S.A.
Initially, it is our view that the defendant can not collaterally attack the deed from the Trustees as void for conveying sovereign lands under the reasoning announced in Pembroke v. Peninsular Terminal Co., Fla. 1933, 108 Fla. 46, 146 So. 249. There the owner of property contracted to sell it to the defendant in exchange for promissory notes. Defendant defaulted and plaintiff sued. As an affirmative defense in that suit defendant contended plaintiff did not have valid title as the Trustees had no authority to convey lands which were at the time of the conveyance sovereignty lands and, in fact, under navigable water. The Supreme Court held defendant could not collaterally attack the deed from the Trustees:
"The deed thus attacked was made by the trustees of the I.I. Fund on August 6, 1920. The answer of appellants making this attack was filed over eight years later, in November, 1928. Neither the trustees nor the state were parties to this suit, ...
* * * * * *
"If the deed of the trustees made under the statute could be thus attacked in a suit between private parties eight years after it was executed, it could be done eighteen or more years thereafter, at which time it might be very difficult, if not impossible, to secure definite and reliable evidence as to just what the depth of the water was over the land in question at the time the conveyance was made, and before it was filled in and improved. It would certainly be a dangerous and unsound public policy to make the validity of land titles dependent upon the ability of those collaterally attacked or defending such titles to produce evidence of this character to defeat or sustain a deed made by the trustees under the state's authority." (Emphasis supplied.) 108 Fla. at 71, 74, 146 So. at 257, 258. See also: Morgan v. Canaveral Port Authority, Fla.App. 1967, 202 So.2d 884; Conoley v. Naetzker, Fla. App. 1962, 137 So.2d 6.
Assuming for the purposes of this opinion that collateral attack is available to defendant and in the interest of a complete exposition of all the appeal facets, we next deal with the Marketable Record Title Act. The purpose of the Marketable Record Title Act was to simplify and facilitate land transactions by letting interested parties rely on the record title, Section 712.10, F.S. 1971, F.S.A.; Marshall v. Hollywood, Inc., Fla.App. 1969, 224 So.2d 743, aff'd 236 So.2d 114 (Fla.); Florida's Marketable Record Title Act: Prospects and Problems, 18 U.Miami L.Rev. 103 (1963); Wilson v. Kelley, Fla.App. 1969, 226 So.2d 123; Whaley v. Wotring, Fla.App. 1969, 225 So.2d 177. In Marshall v. Hollywood, supra, it is stated:
"`The Marketable title concept is simple, although it has fathered many variations in draftsmanship. The idea is to extinguish all claims of a given age (thirty years in the Florida Statute) which conflict with a record chain of title which is at least that old. The act performs this task by combining several features, which generally, are singly labelled as "statutes of limitations," "curative acts," and "recording acts."
"`The new act is in fact all of these: It declares a marketable title on a recorded chain of title which is more than thirty years old, and it nullifies all interests which are older than the root of title. This nullification is subject to a group of exceptions  including interests which have been filed for record in a prescribed manner ...
"`The chief purpose of the act is to extinguish stale claims and ancient defects *613 against the title to real property, and, accordingly, limit the period of search. The act is different from a statute of limitations. In a statute of limitations a claim of a vested, present interest is cut off because of the claimant's failure to sue. If suit is not filed, the claim is lost. By the Marketable Record Title Act, any claim or interest, vested or contingent, present or future, is cut off unless the claimant preserves his claim by filing a notice within a 30-year period. See § 6.5. If a notice is not filed, the claim is lost. The act also goes beyond a curative act. Curative legislation only corrects certain minor or technical defects through the passage of time, whereas under the Marketable Record Title Act, most defects or clouds on title beyond the period of 30 years are removed and the purchaser is made secure in his transaction.'" (Emphasis supplied.) 236 So.2d 114, at 119.
Thus, under Section 712.02 of the Act any person with the legal capacity to own land in this state who, either alone or with his predecessors in title, has been vested with title for thirty years has a marketable record title free and clear of all claims except those enumerated in Section 712.03, F.S. 1971, none of which are applicable in this instance.
Section 712.04, F.S. 1971, provides:
"712.04 Interests extinguished by marketable record title.  Subject to the matters stated in § 712.03, such marketable record title shall be free and clear of all estates, interests, claims or charges whatsoever, the existence of which depends upon any act, title transaction, event or omission that occurred prior to the effective date of the root of title. All such estates, interests, claims or charges, however denominated, whether such estates, interests, claims or charges are or appear to be held or asserted by a person sui juris or under a disability, whether such person is within or without the state, whether such person is natural or corporate, or is private or governmental, are hereby declared to be null and void, except that this chapter shall not be deemed to affect any right, title or interest of the United States, Florida or any of its officers, boards, commissions or other agencies reserved in the patent or deed by which the United States, Florida or any of its agencies parted with title." (Emphasis supplied.)
With reference to § 712.04, all interests, whether they are private or governmental, are void except and only where any right, title or interest is reserved in the deed. The 1890 deed from the Trustees was outside plaintiff's thirty year chain of title and contained no reservation in the deed. It is the defendant's contention that we should read § 712.04 as to include implied state governmental reservation of title to sovereign lands. In our view, and considering the purposes of the statute and the provision that it should be "liberally construed to effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely" on a record title, the statute should be interpreted so as to require an explicit reservation on the state's part. Section 712.10, F.S. 1971, F.S.A.
Furthermore, as we view it, the state had no desire to make implied reservations under the 1890 deed. Chapter 3641, Laws of Florida 1885, and Chapter 3995, Laws of Florida 1889, were passed by the Legislature requiring the Trustees of the Internal Improvement Trust Fund to convey the acreage, part of which plaintiff now holds, to the Florida Coast Line Canal and Transportation Co. The 1889 act which governed the 1890 conveyance made no mention of reservations to be made in the deeds of conveyance.
Had the state wished to create a reservation, it seems logical that it would have so mentioned in the 1889 act or 1890 deed. In view of the fact that there was no such reservation in the deed, the exception of § 712.04 does not govern. Furthermore, *614 had the Legislature wished a broader statutory exception under § 712.04, whether by implication or specific disclaimer, and reservation of any power of conveyance of sovereign land, they could have so provided in the statute. They did not and it is our view that the statute is to be read literally.
We determine that the plaintiff did have valid title to the lands in question, that the marketable record title act governs and clears plaintiff's title and that the 1890 deed from the sovereign without reservations was not an exception under Section 712.04.
We reverse and remand with directions to proceed consistent with the opinions herein expressed.
Reversed and remanded.
MAGER, J., and FERRIS, JOHN G., Associate Judge, concur.