297 So.2d 562 (1974)
John MODRALL, Petitioner,
v.
Frank SAWYER, Respondent.
No. 44994.
Supreme Court of Florida.
May 22, 1974.
Rehearing Denied July 15, 1974.
Certiorari denied. 286 So.2d 610.
ADKINS, C.J., and ROBERTS, BOYD and DEKLE, JJ., concur.
ERVIN, J., dissents.
ERVIN, Judge (dissenting):
This is another of the cases coming before us where sovereignty areas in navigable waters inuring to all the people are entitled to protection by the courts from private seizure.
We have for consideration a petition for writ of certiorari to review the decision of the District Court of Appeal, Fourth District, in the case of Sawyer v. Modrall, 286 So.2d 610.
The parties own adjoining property fronting on the intracoastal waterway in Boca Raton. Respondent brought suit in the circuit court against petitioner seeking to enjoin him from trespassing upon land claimed by respondent, which land is primarily under water of varying depths. The alleged title to the land which respondent claims is derived from an 1890 deed from the Trustees of the Internal Improvement Fund. The lands in issue lie directly north of petitioner's property, contiguous to the intracoastal waterway.
Petitioner conceded that his seawall overlapped the boundary line between the parties' property, thus encroaching on respondent's claimed submerged lands. Petitioner's dock was constructed north of the seawall, and he and the public in general have operated boats over the waters covering respondent's claimed land. At trial, petitioner asserted as an affirmative defense that respondent had no title to the land he claimed, but that the land was, instead, sovereign. Final judgment was entered by the circuit court for petitioner, finding:
"At the time of the purported conveyance from the Trustees of the Internal Improvement Fund to Florida Coast Line and Transportation Company (the 1890 deed), Plaintiff's predecessor in title, that part of the land consisting of submerged coastal marshland was sovereignty land and was not legally alienable by the Trustees."
The trial court, thus finding that respondent did not have title to the lands, held that respondent lacked standing to sue. The District Court, Fourth District, reversed, finding: (1) petitioner could not collaterally attack the 1890 deed from the Trustees as void, relying on Pembroke v. Peninsular Terminal Co., 108 Fla. 46, 146 So. 249 (1933); and (2) even if petitioner could raise such a challenge, the Marketable Record Title Act had acted to nullify the State's interest so that respondent did have clear title to the claimed, submerged lands.
Noting that the Marketable Record Title Act is subject to a group of exceptions, the District Court found that none of the exceptions of Fla. Stat. § 712.03, F.S.A., were applicable to the facts of the case. The District Court then considered Fla. Stat. § 712.04, F.S.A., which provides:
"Subject to the matters stated in § 712.03, such marketable record title shall be free and clear of all estates, interests, claims or charges whatsoever, the existence of which depends upon any act, title transaction, event or omission that occurred prior to the effective date of the root of title. All such estates, interests, claims or charges, however denominated, whether such estates, interests, claims or charges are or appear to be *563 held or asserted by a person sui juris or under a disability, whether such person is within or without the state, whether such person is natural or corporate, or is private or governmental, are hereby declared to be null and void, except that this chapter shall not be deemed to affect, any right, title or interest of the United States, Florida or any of its officers, boards, commissions or other agencies reserved in the patent or deed by which the United States, Florida or any of its agencies parted with title." (Emphasis supplied.)
The District Court then found that the 1890 deed from the Trustees was beyond the 30 year chain of title of respondent required by the Marketable Record Title Act, and that the 1890 deed contained no reservation. Noting that petitioner urged that Fla. Stat. § 712.04, F.S.A., should be construed to include implied state reservation of title to sovereign lands, the District Court concluded that the statute should rather be interpreted so as to require an explicit reservation on the State's part.
ISSUES: I. Whether or not the holding of the District Court that petitioner could not collaterally attack the validity of the 1890 deed conflicts with cases dealing with riparian rights and/or misapplies the case of Pembroke v. Peninsular Terminal Co., supra.
II. Whether or not the District Court's decision creates conflict with Williams v. Guthrie, 102 Fla. 1047, 137 So. 682 (1931), by not protecting the interests of the State when such interests were affected by the case, but the State was not a party to the action.
III. Whether or not the District Court's interpretation of the Marketable Record Title Act conflicts with cases dealing with the Trustee's power to convey sovereign lands.
Petitioner urges conflict with Ferry Pass I. & S. Ass'n v. White's River I. & S. Ass'n, 57 Fla. 399, 48 So. 643 (1909); Thiesen v. Gulf F & A Ry. Co., 75 Fla. 28, 78 So. 491 (1918); and Freed v. Miami Beach Pier Corp., 93 Fla. 888, 112 So. 841 (1927). The cases provide generally that title to submerged tidal lands remains in the State for the benefit of the public; that riparian property owners have a right of access, as well as a right of use of the waters over such submerged lands which is shared in common with the public; and, riparian owners have a qualified right, with the consent of the State, to erect wharves or piers or docks subject to lawful state regulation and the dominant powers of Congress.
Pembroke v. Peninsular Terminal Co., supra, arose from a contract to sell filled-in, formerly submerged land which the seller had obtained through a deed from the Trustees, wherein the seller sought to foreclose a purchase-money contract. The defendant sought to defend the suit on the theory that the Trustees had no authority to transfer the property, and that the deed was void due to an improper description of the lands transferred. This Court held the transfer to have been constitutionally authorized by statute, and, as to the collateral attack on the deed, this Court opined:
"If the deed of the trustees made under the statute could be thus attacked in a suit between private parties eight years after it was executed, it could be done eighteen or more years thereafter, at which time it might be very difficult, if not impossible, to secure definite and reliable evidence as to just what the depth of the water was over the land in question at the time the conveyance was made, and before it was filled in and improved. It would certainly be a dangerous and unsound public policy to make the validity of land titles dependent upon the ability of those collaterally attacked or defending such titles to produce evidence of this character to defeat or sustain a deed made by the trustees under the state's authority." 146 So.2d 249, 258.
*564 It is this latter language upon which the District Court relies in holding that petitioner could not collaterally attack the deed in the instant case.
Petitioner urges that the Pembroke case is clearly distinguishable from the case sub judice, and that the District Court erred in applying a rule of law from Pembroke to the instant case because Pembroke did not deal with the special rights of a riparian land owner, which rights are involved in the case sub judice. Contending that he has such rights and would suffer special and peculiar damages, petitioner urges that  in view of this Court's holdings in the other cited cases  he had a right to assert that the land in suit is sovereignty land and therefore respondent has no title. Respondent urges that the rule of Pembroke was fully applicable to, and properly applied to, the facts of the instant case. Respondent further urges that there is no basis for conflict certiorari jurisdiction presented by petitioner.
Williams v. Guthrie, supra, dealt with an ejectment suit brought by one private party against another private party, wherein the land involved was submerged land and a primary issue was whether or not the plaintiff had obtained any claim of title as against the State. The language in the decision upon which petitioner relies provides that
"when it appears that the rights of the state in lands sued for are involved, and the state is not a party before the court, it is the duty of the courts to take notice of the rights of the state and make appropriate orders to preserve such rights from impairment, even though none of the parties to the cause raise such questions, nor make any observations with respect to the state's rights involved." 137 So. 682, 686.
Petitioner urges that in the instant case the District Court ruled against the State without considering the State's position, in violation of the rule set forth above. Respondent does not refer to the Williams case in his jurisdictional brief.
Petitioner urges conflict with three cases which generally hold that the Trustees are not authorized to convey title to sovereign land to private citizens. State ex rel. Ellis v. Gerbing, 56 Fla. 603, 47 So. 353 (1908); Martin v. Busch, 93 Fla. 535, 112 So. 274 (Fla. 1927), and Pierce v. Warren, 47 So.2d 857 (Fla. 1950). Petitioner urges that the liberal interpretation of the Marketable Record Title Act which the District Court has applied violates the general rule of law contained in the cited cases. Respondent contends that since none of the cited cases deal with the effect of the Marketable Record Title Act, and since the Act specifically deals with the State claims to land, the cases are clearly distinguishable.
It appears clear to me that the trial judge was correct in his ruling and that the District Court erroneously reversed him. This is so not only for the reasons assigned by petitioner as hereinabove outlined, but it has been the holding of this Court that unauthorized conveyances of sovereignty land are a nullity. When the 1890 deed was executed to respondent's predecessor in title, the Trustees of the Internal Improvement Fund had not the slightest authority to dispose of sovereignty land. Even though limited grants of sovereignty land were thereafter authorized by law to be made pursuant to strict rules, this later authority did not validate and confirm prior illegal grants of sovereignty lands.
For example, in Pierce v. Warren, supra, the Trustees of the I.I. Fund mistakenly believed in 1911 they were selling a tract of swamp and overflowed land rather than a tract of sovereignty land in Biscayne Bay. They were not given authority by law to sell limited portions of sovereignty lands until 1917. This Court invalidated the 1911 sale of the Biscayne Bay land because it was sold without power or authority of law and the deed was void. The Court, in Pierce, held that such a sale was *565 taken with notice by the buyer that the tract was sovereignty or tideland.
The later authority in law to sell limited portions of sovereignty lands is hedged in with strict rules and restrictions requiring notice to the public and others affected in order that neither the public nor private rights will be injuriously affected by any proposed sale.
The Pembroke v. Peninsular Terminal Co., supra, case was decided in 1933 several years prior to Pierce v. Warren, which was decided in 1950. The Pembroke case involved submerged land that had been filled in rendering it impossible many years after the filling to secure definite and reliable evidence as to the depth of the water that previously covered the area. This evidentiary difficulty made it impossible to determine if the land was in fact sovereign at the time of the Pembroke litigation. Under these particular circumstances peculiar only to the land involved in the Pembroke case, this Court refused to disturb the sale. Here, as in the Pierce case, we have no problem of filled-in land. The respondent's claim is to existing submerged lands; not filled-in lands. I think we have a duty to follow the findings of the Circuit Judge who heard the evidence as to the nature of the submerged land in question as to its sovereignty. We really should not be judicially giving open water unfilled-in sovereignty areas to private persons. These areas belong to the public.
The Marketable Record Title Act (particularly F.S. Section 712.04, F.S.A. thereof) does not by literal interpretation clear title to private persons in open-water sovereignty areas. It is an extreme presumption on the part of the Legislature that by that Act it can expressly invalidate State and Federal public land ownerships by the mere passage of time because of the existence of conflicting private titles thereto which were void ab initio, except where the government title is expressly reserved in its patent or deed. The consequences of such a presumption could create many untoward results highly detrimental to public interests. Presumably thereunder an illegal government deed to a private person covering a sector of any open waterway or harbor would ripen into private ownership after thirty years.
All conveyances of submerged land areas by the Trustees of the Internal Improvement Fund carry with them implicit reservation to the State of navigable waters, even though the description of an area encompasses navigable water areas  and particularly those which continue in use by the public for navigational purposes, as in the case here  unless contemporaneously with the making of any conveyance it appears after statutory notice and hearing to the public and affected parties and careful study by the Trustees that a limited grant in a sovereignty area will do no public or private harm. Such a reservation by implicit necessity results when the Trustees' deed of conveyance either mistakenly or illegally incorporates sovereignty areas. In such circumstances the deed is void unless there is clear estoppel or inequity. The area covered by the void deed in the instant case has never been filled in, has continued constantly to be in use for boating by the public. Respondent and his predecessors in title have all along been on notice of the sovereign inalienable quality of this open water, navigable area and its obvious public use and status as sovereign land.
The application of the Marketable Record Title Act when applied to submerged lands must be considered in connection with the case law discussed hereinbefore. Title to sovereignty lands as between the State and private persons must of necessity be determined not on the basis of express reservations in patents or deeds or the length of time of existence of conveyances to private persons, but upon the nature of the particular lands, their navigability and use from the public as well as the private standpoint. The evidentiary circumstances as to the nature of any submerged *566 area must be considered to determine if it was susceptible to alienation.
The appellate courts ought not in this case to substitute their findings for those of the trier of facts on the question of whether the area is sovereignty land.
The evils of failure to protect sovereignty areas by the courts where various legal pretexts are resorted to but which have little but technical bases to support them were pointed out by me in a dissent in the case of Trustees of I.I. Fund v. Wetstone, Fla. 1969, 222 So.2d 10. The soundness of the views expressed in that dissent becomes more and more apparent as cases of the kind here treated make their appearance with increasing frequency.
I agree with the contentions of petitioner and would quash the decision of the District Court and reinstate the judgment of the trial court.