454 So.2d 6 (1984)
COASTAL PETROLEUM COMPANY, and Board of Trustees of the Internal Improvement Trust Fund of the State of Florida, Appellants,
v.
AMERICAN CYANAMID COMPANY, a Maine Corporation, Appellee. and
COASTAL PETROLEUM COMPANY, and Board of Trustees of the Internal Improvement Trust Fund of the State of Florida, Appellants,
v.
ESTECH, INC., a Delaware Corporation, Appellee.
Nos. 83-1378, 83-1413, 83-1425 and 83-1478.
District Court of Appeal of Florida, Second District.
July 13, 1984.
*7 Robert J. Angerer of Law Offices of Robert J. Angerer, Joseph C. Jacobs of Ervin, Varn, Jacobs, Odom and Kitchen, Tallahassee, and C. Dean Reasoner of Reasoner, Davis & Vinson, Washington, D.C., for appellant Coastal Petroleum Co.
Robert J. Beckham and James R. Hubbard of Beckham & McAliley, P.A., William C. Crenshaw of Valdes-Fauli, Richardson & Cobb, P.A., Miami, and Jim Smith, Atty. Gen., Louis F. Hubener and Bruce Barkett, Asst. Attys. Gen., Tallahassee, for appellant Bd. of Trustees of the Internal Improvement Trust Fund.
Julian Clarkson and Hume F. Coleman of Holland & Knight, Tallahassee, for all appellees.
PER CURIAM.
Coastal Petroleum Company and the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida were codefendants below in separate quiet title actions. They appeal the summary final judgments rendered in favor of American Cyanamid Company and Estech, Inc., plaintiffs below. We affirm.
In 1883 the Trustees deeded certain lands in Polk County as swamp and overflowed lands to plaintiffs' predecessors in title. These lands included some areas of the riverbed of the Peace River. Plaintiffs deraigned their titles from these deeds, which contained no reservations of any right, title or interest by the Trustees. In these actions, they sought to quiet title to these lands pursuant to chapter 65, Florida Statutes (1981).
As a starting point for our discussion, it should be recalled that the State of Florida was admitted to the Union by Act of Congress approved March 3, 1845. In 1850 the United States Congress enacted the Swamp Lands Act, granting to the various states of the union swamp and overflowed lands, which were unfit for cultivation and unsold on or after September 28, 1850. 43 U.S.C. § 982 (1964) (effective September 28, 1850). In 1857 patents for the lands here involved were issued to the state pursuant to the 1850 act. Prior to issuance of these patents, the Florida General Assembly had vested the power of sale over all swamp and overflowed lands in the Trustees. Ch. 610, §§ 1 & 2, Laws of Fla. (1855).
In 1977 Coastal Petroleum filed several suits in the United States District Court in Leon County, Florida, against plaintiffs. Coastal sought to recover damages for the alleged conversion of phosphate from these lands. Coastal Petroleum claimed the lands were state owned sovereignty lands subject to a lease between it and its lessor, the Trustees, entered into in 1946. We are advised that these federal cases are now pending.
After Coastal initiated the litigation in the federal court, plaintiffs, in 1982 and 1983, filed quiet title suits in the Polk County Circuit Court seeking to confirm their ownership of the lands at issue. They also sought to remove the cloud created by Coastal's claim that the lands were state owned sovereignty lands subject to Coastal's lease.
Coastal moved to dismiss the suits to quiet title based on Mabie v. Garden Street Management Corp., 397 So.2d 920 (Fla. 1981). The trial court denied the motion. Plaintiffs then filed motions for summary judgment. The trial court granted these motions because, under the doctrine of legal estoppel, the conveyances of the lands by the United States and the State of Florida vested fee simple title in the plaintiffs. Coastal and the Trustees filed timely appeals from both summary final judgments. For purposes of oral argument, the appeals were consolidated. Since these cases involve identical issues, we address them in a single opinion.
Defendants raise several points. Initially, they assert the trial court should have dismissed the case for improper venue. *8 This issue, however, has been decided adversely to appellants in Board of Trustees of the Internal Improvement Trust Fund v. Mobil Oil Corp., 455 So.2d 412 (Fla.2d DCA 1984), so we do not address it here.
In arguing that the trial court erred in entering the judgments, the Trustees raised three substantive questions:
1. Do the 1883 swamp and overflowed lands deeds issued by the Trustees include sovereignty lands below the ordinary high-water mark of navigable rivers where the Trustees held no title to such sovereignty lands at the time of the conveyances?
2. Does the doctrine of legal estoppel or estoppel by deed apply to 1883 swamp and overflowed deeds barring the Trustees' assertion of title to sovereignty lands?
3. Does the Marketable Record Title Act, chapter 712, Florida Statutes, operate to divest the Trustees of title to sovereignty lands below the ordinary high-water mark of navigable rivers?
In its brief, Coastal raises the additional point that the trial court erred in disposing of this litigation by summary final judgment. That point, however, is subsumed by the three substantive questions raised by the Trustees, which we now briefly discuss.

1. The sovereignty lands issue.

As to the first issue, the trial court rejected the Trustees' argument that the plaintiffs took title with "notice of navigability" so that the Trustees' conveyances did not include sovereignty lands. See Odom v. Deltona Corp., 341 So.2d 977, 988 (Fla. 1976). The trial court observed that these lands were surveyed before they were conveyed into private ownership as swamp and overflowed lands; furthermore, no water courses on the lands were meandered by the original government surveyors. Cf. Broward v. Mabry, 58 Fla. 398, 50 So. 826 (1909). The court determined that when the state later conveyed such lands as swamp and overflowed lands without limitation or reservation of state owned sovereignty lands, the lands so conveyed were not subject to any "notice of navigability." Similarly, the court held the same was true when the lands were conveyed by the United States Government patent without limitation or reservation. Cf. Pierce v. Warren, 47 So.2d 857 (Fla. 1950), cert. denied, 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350 (1951), and Martin v. Busch, 93 Fla. 535, 112 So. 274 (1927).
We agree with the above conclusions of the trial court. Section 197.228(2), Florida Statutes (1981), recognizes that this state's unconditional conveyance of land to private individuals without reservation of public rights is a contemporaneous finding that the land is not sovereignty land. Here, the Trustees conveyed the lands in question to private individuals as swamp and overflowed lands in 1883, without any reservation of rights in the deeds. The contemporaneous findings made by the Trustees when they executed their conveyances and the decisions by the government surveyors not to meander any of these watercourses are not now open to question. Rather, at this late date, we must accept their actions as correct and accord the Trustees' conveyances the legal sanctity they deserve. See Odom v. Deltona Corp., 341 So.2d at 984, 988-989.

2. The legal estoppel question.

While the trial judge considered each of the issues urged by the defendants, he apparently grounded the summary final judgments primarily on the principle of legal estoppel. We think the trial judge was correct in quieting the fee simple title in the plaintiffs on this basis. First, the court properly concluded that defendants are estopped from asserting any right or title in derogation of the 1883 deeds conveying swamp and overflowed lands. Board of Trustees of the Internal Improvement Fund v. Lobean, 127 So.2d 98 (Fla. 1961) (legal estoppel is determined by the intentions of the parties as expressed in the deed); see also Florida Board of Forestry v. Lindsay, 205 So.2d 358, 361 (Fla. 2d DCA 1967), and City of Tarpon Springs v. Koch, 142 So.2d 763 (Fla. 2d DCA 1962), cert. discharged, 155 So.2d 151 (Fla. 1963). *9 Again, in addressing this issue, the Trustees urge that the lands were sovereignty in character, but they did not obtain title to them until the legislature enacted chapter 69-308, Laws of Florida. See § 253.12, Fla. Stat. (1971) (vesting title to submerged lands under navigable waters in the Trustees). Thus, they argue that they were without authority to ever convey title until more than eighty years after issuance of the deeds relied on by plaintiffs. Even assuming, arguendo, that the lands were sovereignty as opposed to swamp and overflowed lands, titles acquired by defendants to these lands after their conveyance to the plaintiffs inured to the benefit of the plaintiffs as grantees. Daniell v. Sherrill, 48 So.2d 736, 740 (Fla. 1950); Spencer v. Wiegert, 117 So.2d 221 (Fla. 2d DCA 1959), cert. denied, 122 So.2d 406 (Fla. 1960).
Accordingly, we hold that the doctrine of legal estoppel bars any claim of ownership by the Trustees, since they did not reserve any rights in the deeds to the plaintiffs' predecessors. It follows that Coastal Petroleum is also estopped from claiming any right or title against plaintiffs under its lease from defendants. McAdoo v. Moses, 101 Fla. 936, 132 So. 638, 640 (1931); Key West Wharf and Coal Co. v. Porter, 63 Fla. 448, 58 So. 599, 610 (1912).

3. Applicability of the Marketable Record Title Act.

The final issue we address is whether the Marketable Record Title Act (MRTA), chapter 712, Florida Statutes, applies to the 1883 swamp and overflowed deeds. The legislature adopted MRTA in 1963. Section 712.02, Florida Statutes (1963) provides that any person whose chain of title extends from any title transaction recorded over thirty years has a marketable record title free and clear of all claims except those in 712.03. MRTA, however, does not affect the state's right, title or interest reserved in a patent or deed by which the state parted with title if the reservation is explicit. § 712.04, Fla. Stat. (1981); Sawyer v. Modrall, 286 So.2d 610 (Fla. 4th DCA 1973), cert. denied, 297 So.2d 562 (Fla. 1974). See also Odom, 341 So.2d at 989. Accord Starnes v. Marcon Investment Group, 571 F.2d 1369 (5th Cir.1978).
After the supreme court decided Odom, the 1978 legislature amended section 712.03, Florida Statutes, to exempt state title to lands beneath navigable waters acquired by virtue of sovereignty. See § 712.03(7), effective June 15, 1978. The Trustees assert that the lands were sovereignty lands and thus exempted from MRTA's application by the 1978 amendment. As previously noted, we agree with the trial court's determination that these lands were not sovereign in nature.
Even assuming, arguendo, the lands were sovereignty lands, we cannot agree with the Trustees. Rather, we align ourselves with the view recently expressed by the Fifth District Court of Appeal. There our sister court held that section 712.03(7) does not apply retroactively even where the Trustees themselves wrongfully issued a deed at the "root of title" prior to the initial passage of MRTA in 1963. Board of Trustees of the Internal Improvement Trust Fund v. Paradise Fruit Co., 414 So.2d 10 (Fla. 5th DCA 1982), petition for review denied, 432 So.2d 37 (Fla. 1983). Here, as in Paradise Fruit Co., the Trustees executed the deeds, which are the plaintiffs' "root of title." § 712.01(2), Fla. Stat. (1981). Plaintiffs' titles under the 1883 deeds were perfected under MRTA, as enacted in 1963; therefore, retroactive construction of the amendment would unconstitutionally deprive them of rights vested in 1963. Paradise Fruit Co., 414 So.2d at 11. See also State Department of Natural Resources v. Contemporary Land Sales, Inc., 400 So.2d 488 (Fla. 5th DCA 1981). Consequently, MRTA vested title to these lands in the plaintiffs even if they were sovereignty lands.
Accordingly, we affirm the summary final judgments in each of the cases. However, because we recognize the significant impact of our decision on the riverbeds of the Peace River, we certify the following questions to the Supreme Court of Florida as questions of great public importance:
1. DO THE 1883 SWAMP AND OVERFLOWED LANDS DEEDS ISSUED *10 BY THE TRUSTEES INCLUDE SOVEREIGNTY LANDS BELOW THE ORDINARY HIGH-WATER MARK OF NAVIGABLE RIVERS?
2. DOES THE DOCTRINE OF LEGAL ESTOPPEL OR ESTOPPEL BY DEED APPLY TO 1883 SWAMP AND OVERFLOWED DEEDS BARRING THE TRUSTEES' ASSERTION OF TITLE TO SOVEREIGNTY LANDS?
3. DOES THE MARKETABLE RECORD TITLE ACT, CHAPTER 712, FLORIDA STATUTES, OPERATE TO DIVEST THE TRUSTEES OF TITLE TO SOVEREIGNTY LANDS BELOW THE ORDINARY HIGH-WATER MARK OF NAVIGABLE RIVERS?
HOBSON, A.C.J., and SCHEB and LEHAN, JJ., concur.