472 So.2d 1287 (1985)
BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT TRUST FUND, State of Florida, Appellant,
v.
Charles R. STEVENS and Louise Helen Jahncke Stevens, Appellees.
No. 84-719.
District Court of Appeal of Florida, Second District.
July 10, 1985.
*1288 Lee R. Rohe, Asst. Gen. Counsel, Dept. of Natural Resources, Tallahassee, for appellant.
Hywel Leonard of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellees.
PER CURIAM.
In this case we are called upon to consider again the effect of the Marketable Record Title Act, Chapter 712, Florida Statutes, on formerly submerged lands.
Mr. and Mrs. Stevens filed suit in July 1983 to quiet title to certain lands by virtue of the Marketable Record Title Act. Among the lands that their deeds encompassed were lands formerly submerged under Hurricane Bay but filled by the Stevenses. The Stevenses have, since 1958, developed a mobile home park on the filled lands and adjacent uplands. The state claimed that the filled lands are sovereignty lands, exempt from operation of the Marketable Record Title Act (MRTA). To avoid a factual dispute about the formation of Hurricane Bay, the Stevenses stipulated that the lands formerly submerged beneath Hurricane Bay were indeed sovereignty lands. Their contention was that MRTA extinguished the sovereign's title to the filled lands.
The Stevenses moved for summary judgment, and the trial court held that the Board of Trustees of the Internal Improvement Trust Fund ("Trustees") held no title to or interest in the filled parcels; rather, fee simple ownership vested in the Stevenses. The Trustees then appealed.
The Trustees have urged two points on appeal. First, they argue that application of MRTA to the Stevenses' land unconstitutionally violates Article X, section 11, of the Florida Constitution, because the Trustees never conveyed the lands into private ownership. We find no merit to this point.
Article X, section 11, provides:
The title to lands under navigable waters, within the boundaries of the state, which have not been alienated, including beaches below mean high water lines, is held by the state, by virtue of its sovereignty, in trust for all the people. Sale of such lands may be authorized by law, but only when in the public interest... .
The Trustees make their first argument in the face of certain admitted transactions. The Stevenses' lands were surveyed in 1873 and classified as swamp and overflowed lands. On September 15, 1879, the United States granted this land to the State of Florida under the Swamp Lands Act of *1289 1850. 43 U.S.C. § 982 (1964) (effective September 28, 1850). In 1883 part of the land in question was conveyed by the State of Florida Land and Improvement Co; then, in 1885, the Trustees conveyed that land by a deed of confirmation to Hamilton Disston in which it was stated that the Trustees had full power to convey the lands.
In spite of the conveyances of the lands in question as swamp and overflowed lands, the Trustees attempted to introduce a fact issue as to the nature of the lands. They submitted the affidavit of a land planner with the Department of Resources, who stated that an 1846 map appeared to show a water body, then known under the generic name of "Ostego Bay," lying in the present location of Hurricane Bay. The Stevenses' maps, approved by the United States Surveyor General in 1873, showed no navigable waters on or adjacent to the Stevenses' lands; and, prior to 1929, the United States Geodetic Survey maps do not show Hurricane Bay. Nevertheless, to avert a fact issue that would preclude entry of summary judgment, the Stevenses stipulated that the lands were sovereignty lands only for the purposes of the court's ruling on their motion for summary judgment.
The Trustees now argue that they could not convey sovereignty lands by swamp and overflowed lands deed; therefore, the sovereignty lands were never alienated. Consequently, they say Article X, section 11, of the Florida Constitution precludes application of the Marketable Record Title Act to the Stevenses' land.
This argument fails, however, because the Trustees do not challenge the conveyances themselves nor do they contest that they expressly conveyed all the property into private ownership after a survey. Simply, the lands have been alienated. Furthermore, the Florida Supreme Court has held the Marketable Record Title Act constitutional. See City of Miami v. St. Joe Paper Co., 347 So.2d 622 (Fla. 3d DCA 1977), aff'd, 364 So.2d 439 (Fla. 1978), appeal dismissed, 441 U.S. 939, 99 S.Ct. 2153, 60 L.Ed.2d 1040 (1979); Odom v. Deltona Corp., 341 So.2d 977 (Fla. 1976); Marshall v. Hollywood, Inc., 236 So.2d 114 (Fla. 1970), cert. denied, 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed. 384 (1970).
The Trustees' second point is that section 712.03(7), Florida Statutes (Supp. 1978), of the MRTA must be applied retroactively, vesting title to the lands at issue in the state. We also find no merit to this contention.
Section 712.03(7) provides that marketable record title shall not affect "[s]tate title to lands beneath navigable waters acquired by virtue of sovereignty." Our supreme court has not directly addressed the application of MRTA to sovereignty lands since the enactment of the 1978 amendment. See Askew v. Sonson, 409 So.2d 7, 9 (Fla. 1981). The fifth district, however, squarely faced the issue in Board of Trustees of the Internal Improvement Trust Fund v. Paradise Fruit Co., 414 So.2d 10 (Fla. 5th DCA 1982), petition for review denied, 432 So.2d 37 (Fla. 1983), and refused to give the 1978 amendment retroactive effect. The fifth district concluded that MRTA, as apparent from its plain language prior to the 1978 amendment, could perfect private ownership of sovereignty lands in applicable cases. See also State Dept. of Natural Resources v. Contemporary Land Sales, Inc., 400 So.2d 488 (Fla. 5th DCA 1981).
We have previously aligned ourselves with Paradise Fruit Co. and refused to apply the 1978 amendment retroactively. Coastal Petroleum Co. v. American Cyanamid Co., 454 So.2d 6 (Fla. 2d DCA 1984). As in Coastal Petroleum, the Trustees executed the deeds which are the Stevenses' "root of title." § 712.02(2), Fla. Stat. (1981). Their titles under these deeds were perfected under MRTA, as originally enacted in 1963. Id., 454 So.2d at 9. Accordingly, we hold that retroactive application of subsection (7) would unconstitutionally deprive the Stevenses of rights vested in them in 1963. Id.
We affirm the trial court's order granting final summary judgment in favor of the *1290 Stevenses. However, consistent with our actions in Coastal Petroleum, we certify to the Supreme Court of Florida as a question of great public importance: Can section 712.03(7) be applied retroactively?
SCHEB, A.C.J., and SCHOONOVER, J., concur.
BENTLEY, E. RANDOLPH, Associate Judge, concurs in part and dissents in part.
BENTLEY, E. RANDOLPH, Associate Judge, concurring in part and dissenting in part with opinion.
I agree with the majority's views on the first point raised by the Trustees; however, I disagree with the resolution of the second point.
Having given all due respect and consideration to this court's pronouncement in the Coastal Petroleum case, I am nonetheless persuaded that when the legislature enacted the MRTA in 1963 it did not intend for the act to apply to lands held in public trust for the people. This is clear from the legislature's swift reaction to the judicial interpretation of MRTA in Odom v. Deltona Corp. In Odom the supreme court stated, in dicta, that it seemed "logical" that, "when the Legislature enacts a Marketable Title Act, as found at Chapter 712, Florida Statutes, clearing any title having been in existence thirty years or more, the state should conform to the same standard as it requires of its citizens; the claims of the Trustees to beds underlying navigable waters previously conveyed are extinguished by the Act." 341 So.2d at 989. Not only was this conclusion unnecessary to the resolution of the issue before the court, it was patently illogical.
Every attorney schooled in the law of real property acknowledges the difficulties inherent in extracting title from the sovereign. For example, one cannot acquire any right of possession against the state's title by adverse possession, simply because "[a]dverse possession does not obtain against the State." Pearce v. Cone, 2 So.2d 360, 361 (Fla. 1941). This principle is "long established and well recognized." Lovey v. Escambia County, 141 So.2d 761, 763 (Fla. 1st DCA 1962). See also, § 95.14, Fla. Stat.; 2 Fla.Jur.2d Adverse Possession § 60. The reason for that principle, of course, is that sovereign lands are held in trust for the people. To hold that this trust can be violated by the operation of a marketable title act that does not specifically provide for that result flies in the face of the most fundamental principles of property law.
As stated above, the governor and legislature reacted quickly to the erroneous judicial interpretation of the MRTA in 1978. Governor Askew, calling the legislature into special session, proclaimed that it was "vital to the interest of the State of Florida that the Legislature immediately consider and adopt legislation for the protection of the State's land." Laws of Florida, Special Acts, Vol. 2, p. xiv (1978). Any attempt to protect the state's sovereign lands through enactment of the amendment would be futile unless the amendment were to be given retroactive effect, because otherwise conveyances of swamp and overflowed lands made prior to 1948 would not come within the scope of the amendment. In fact, these would include the greatest bulk of the swamp and overflowed lands conveyances made by the Trustees. Thus, common sense dictates that we read the amendment as expressive of the legislature's original intent when it enacted the MRTA in 1963.
Justice Sundberg, dissenting in Odom v. Deltona Corp., has persuasively advocated the Trustees' view of the intended effect of the MRTA on sovereign lands:
It is inconceivable to me that a marketable record title act which is aimed primarily at quieting title to private lands can be utilized to divest the people of the State of Florida of lands held in public trust for them. Absent safeguards of statutory notice and hearing to the public and affected parties and of a conclusion after careful study by the Trustees of the Internal Improvement Fund that a limited grant of sovereign lands will do no public or private harm, it should be presumed that all conveyances of submerged *1291 land areas by the Trustees are made with implicit reservation to the state of navigable water areas. What is essentially a curative act could not have been intended by the legislature to provoke divestiture of public trust lands.
341 So.2d at 990 (Sundberg, J., dissenting).
My position essentially is that the judicial interpretations of the effect of MRTA on sovereign lands have been unfortunately misdirected; my concern is for the protection of the lands belonging to all of the people of this state; therefore, I must respectfully dissent from the court's opinion on this issue. I would reverse the trial court's order granting summary judgment in favor of appellees and remand for further proceedings consistent with the views I have expressed.