DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BB INLET PROPERTY, LLC,**
Appellant,

v.

**920 N. STANLEY PARTNERS, LLC,**
Appellee.

No. 4D18-3765

[March 11, 2020]

Appeal and cross-appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Jeffrey Dana Gillen, Judge; L.T. Case No. 502017CA000048.

Gary J. Nagle of Law Office of Gary J. Nagle, Juno Beach, and David Mark Levin of Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., Sarasota, for appellant/cross-appellee.

Jeffrey C. Schneider, Stuart I. Grossman, Matthew Joseph McGuane of Levine Kellogg Lehman Schneider + Grossman, LLP, Miami, for appellee/cross-appellant.

MAY, J.

We are harkened back to the common law on riparian and littoral rights and their evolution to modern day in a dispute between an upland property owner ("upland owner") and a submerged land property owner ("submerged land owner"). Specifically, we are called upon to determine whether the trial court erred in determining the upland owner had the right to retain a dock that extends onto the submerged land. We find no error and affirm. On cross-appeal, the upland owner claims error in the trial court's denial of its motion for sanctions. We agree with the upland owner that sanctions were warranted, and thus reverse and remand for the trial court to determine the amount of the upland owner's attorney's fees and costs to be awarded.

The upland property is bounded on the east by the Atlantic Ocean and on the west by the Intracoastal Waterway. It includes a dock, which extends onto the submerged land and the Intracoastal Waterway.

The submerged land's prior owner acquired the property by tax deed in 1989 and was aware of the dock. In 1995, the upland's prior owner requested the Town of Manalapan's architectural commission to extend the dock. Only one person, who did not own the submerged land, objected to the extension. The commission approved the dock's extension at two public hearings. In 1996, the Department of Environmental Resources Management of Palm Beach County ("DERM") issued the wetlands alterations permit to the prior upland owner. The DERM permit approved an extension of the dock's length to 85 feet.

The current upland owner purchased the property in 2015. The submerged land went through two ownership transfers resulting in the current ownership. Neither the current upland owner, nor the submerged land owner owned the submerged land when the dock was originally built nor extended. Upon obtaining title, the current submerged land owner questioned the current upland owner's right to the dock.

The upland owner then filed a complaint requesting a declaratory judgment regarding its riparian and littoral rights to the dock. It alternatively sought to retain the dock by prescriptive easement.

In its answer, affirmative defenses, and counterclaim, the submerged land owner alleged the dock permit "was fraudulently obtained" because the permit application falsely stated that the prior upland owner also owned the submerged land. The upland owner moved to dismiss the counterclaim, arguing in part that the submerged land owner failed to plead fraud with particularity.

The trial court granted the motion and gave the submerged land owner leave to amend. The submerged land owner subsequently filed its answer, amended affirmative defenses, and amended counterclaim, expanding its allegations that the prior upland owner's permit application falsely stated he owned the submerged land as well.

The current upland owner requested the submerged land owner to provide the permit application, but the document was never produced. Ultimately, the parties agreed to an order that allowed the submerged land owner to produce the permit application. The order further provided that if the submerged land owner did not produce the document, it "stipulate[d] and agree[d] that there are no permit applications in existence in support of the fraud allegations in its Amended Affirmative Defenses and Amended Counterclaim." No document was ever produced.

2

The submerged land owner then filed its answer and second amended affirmative defenses alleging: 1) the upland owner's dock's installation and use of the submerged land fell outside the scope of Florida riparian rights; 2) the dock and its extension were built without the consent of the submerged land's then owner; 3) the dock substantially encroached on the submerged land owner's property rights; and 4) the dock was not constructed in compliance with all applicable building code regulations. It asserted a counterclaim to quiet title, for ejectment, and trespass.

### *Sanctions*

The upland owner moved for sanctions under the inequitable conduct doctrine, arguing the submerged land owner's counterclaim was premised on false facts. The trial court ultimately held an evidentiary hearing where the Manalapan town manager, clerk, and another witness testified. The court also considered the town manager and clerk's affidavits. The trial court denied the motion for sanctions, finding:

> The town does not have an application for a permit to build the dock which is the subject of this dispute. It is unlikely any such paper application ever existed. The town does not require submission of a written application to obtain a permit to build a dock. There exists no evidence that there was any fraud perpetrated or code violated in the procurement of a permit-authority for dock construction or extension.

The court further found, "it is patently obvious that [the submerged land owner] made his allegations based not on fact but instead on his assumptions." And, these "assumptions are erroneous and the allegations were unsupported."

But, the court ultimately concluded the inequitable conduct doctrine was inapplicable because, although the allegations were ill-advised and negligently made, they were not made in "bad-faith, vexatious, wanton, egregious or oppressive conduct or motivation."

### *Summary Judgment*

The upland owner moved for summary judgment on all claims and counterclaims. The submerged land owner cross-moved for summary judgment. At the hearing, the upland owner argued that waiver and estoppel prevent the submerged land owner from pursuing the fraud claim because it failed to prove anyone objected to the structure being placed on

the submerged land.  The upland owner argued the dock was constructed in accordance with the existing regulations.

In response, the submerged land owner argued the upland owner failed to establish a prescriptive easement.  It argued "the law promotes neighborliness, friendliness between parties, boundary parties and does not want to favor people losing land by acquisition or permissive use of the property."  Thus, according to the submerged land owner, the upland owner's argument that no one objected should not prevail.  The submerged land owner also argued the law only allows an individual to build to the low watermark unless it has some consent, which the upland owner didn't have.

The trial court granted the upland owner's motion and denied the submerged land owner's cross-motion for summary final judgment.  The court concluded that the submerged land owner:

> took title to the submerged land with actual knowledge of the long-extant dock which was built with permission of the Town of Manalapan.  Therefore, [the submerged land owner] acquired title subject [to the upland owner's] littoral rights which include the preservation of its dock, and it is appropriate for this Court to enter summary final judgment in favor of [the upland owner] and, accordingly deny [the submerged land owner's] motion for summary final judgment.

The trial court denied the submerged land owner's motion for reconsideration.  It entered its final judgment in favor of the upland owner.  The judgment stated:

> The Dock, including the dock pilings and dolphin pilings, are lawfully located on the Submerged Land based upon [the upland owner's] littoral rights set forth above and defined more fully by Florida law, and the prior authorization and approval of Palm Beach County and the Town of Manalapan.

The court further indicated it did not need to decide the prescriptive easement claim.

From this judgment, the submerged land owner appeals.  The upland owner cross-appeals the order denying sanctions.

4

***The Appeal***

The submerged land owner argues the trial court erred in granting the upland owner's motion for summary judgment because: 1) the dock extends beyond what is allowed by the common law riparian right to construct a dock; 2) there is no evidence of the prior submerged land owner's consent to the dock's construction; 3) there is no evidence to support the upland owner's claim to a prescriptive right; and 4) the DERM permit did not authorize trespass, occupation, or construction on the submerged land without the owner's consent.

The upland owner responds that: 1) it had a littoral right to access and use navigable waters; 2) under the Public Trust Doctrine, the prior submerged land owner did not need to consent to the dock's construction; and 3) given the dock's construction in 1957, the submerged land owner waived its arguments and is estopped from now challenging the dock.

We have de novo review of an order granting summary judgment. *Dennis v. Kline*, 120 So. 3d 11, 20 (Fla. 4th DCA 2013).

A trial court must grant a summary judgment "if the pleadings and summary judgment evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.510(c). "In determining whether to grant a motion for summary judgment, all facts must be taken in the light most favorable to the non-moving party." *Carnes v. Fender*, 936 So. 2d 11, 14 (Fla. 4th DCA 2006).

- ***Common Law Riparian/Littoral Rights***

The central issue is whether the upland owner has a common law littoral right to the dock located on privately-owned submerged land. The answer is yes.

"Riparian rights are rights to use the water." *Brannon v. Boldt*, 958 So. 2d 367, 372 (Fla. 2d DCA 2007). Technically, a riparian is land with water frontage; specifically, "land abutting non-tidal or navigable river waters." *Kester v. Tewksbury*, 701 So. 2d 443, 444 n.2 (Fla. 4th DCA 1997). Littoral "refers to the land abutting navigable ocean, sea, or lake waters." *Id.* However, "the terms riparian rights and littoral rights are now used interchangeably." *Brannon*, 958 So. 2d at 375.

"[T]he littoral rights to access, use, and view are easements under Florida common law." *Walton County v. Stop the Beach Renourishment,*

*Inc.*, 998 So. 2d 1102, 1112 (Fla. 2008), *aff'd sub nom. Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702 (2010). These rights are considered affirmative easements because "they grant 'rights to enter and use land in possession of another.'" *Id.* (RESTATEMENT (THIRD) OF PROP. § 1.2 cmt. a. (AM. LAW INST. 2000)).

Upland owners have common law littoral rights, including: "(1) the right to have access to the water; (2) the right to reasonably use the water; (3) the right to accretion and reliction; and (4) the right to the unobstructed view of the water." *Accardi v. Regions Bank*, 201 So. 3d 743, 746 (Fla. 4th DCA 2016) (quoting *Stop the Beach Renourishment, Inc.*, 998 So. 2d at 1111). These rights, which are subject to regulation, are private property rights that cannot be taken away without just compensation. *Id.*

Upland owners also "have a qualified right, with the consent of the [s]tate, to erect wharves or piers or docks subject to lawful state regulation and the dominant powers of Congress." *Modrall v. Sawyer*, 297 So. 2d 562, 563 (Fla. 1974); *see also Shore Vill. Prop. Owners' Ass'n v. State Dep't of Envtl. Prot.*, 824 So. 2d 208, 211 (Fla. 4th DCA 2002).

We have recognized a distinction between docks constructed to facilitate access to navigable waters and those constructed for commercial purposes. In *Shore Village*, we held that "riparian rights include the building of a dock to have access to navigable waters." 824 So. 2d at 211. However, in *Tewksbury v. City of Deerfield Beach*, 763 So. 2d 1071 (Fla. 4th DCA 1999), we held that the use of a dock, extending over privately-owned submerged land, to operate a restaurant is beyond the scope of littoral rights under Florida law. *Id.* at 1071.

The upland owner filed this action because the dock "is the only means for access to the Intracoastal Waterway as the nearest navigable waters." The upland owner provided an affidavit attesting to that fact. It also filed an affidavit of a dock design and construction specialist, who examined the dock and concluded:

> It is therefore necessary for the [d]ock to linearly extent [*sic*] outward from and perpendicular to the sea wall. Due to the shallow water depths, a dock of at least 85-feet past the rip-rap and perpendicular to the sea wall is necessary to safely dock a boat of average size in this locale.

The submerged land owner failed to present any evidence that the upland owner's dock was unnecessary or exceeded what was necessary to facilitate access to the Intracoastal Waterway. The trial court correctly

6

found that the upland owner had a littoral right to the dock.  *5F, LLC v. Dresing*, 142 So. 3d 936, 947 (Fla. 2d DCA 2014).

- ### *The Public Trust Doctrine*

The next step in determining whether the riparian owner has the qualified right to construct or retain a dock is whether the owner complied with the applicable regulations as part of the Public Trust Doctrine.  *See* Op. Att'y Gen. Fla. 96-49 (1996).

"At common law, all navigable waters and lands under such waters were held by the sovereign for the benefit of the people."  *Graham v. Edwards*, 472 So. 2d 803, 806 (Fla. 3d DCA 1985).  "[O]wner[s] of land abutting on navigable waters had no exclusive right in the waters, below ordinary highwater mark or in the lands under the waters, except the right of access to and from the navigable waters . . . ."  *Merrill-Stevens Co. v. Durkee*, 57 So. 428, 431 (Fla. 1912).

This benefit, held by the sovereign, is now codified in Article X, section 11, of the Florida Constitution and is known as the Public Trust Doctrine. Section 11 states that "[t]he title to lands under navigable waters, within the boundaries of the state, which have not been alienated, . . . is held by the state, by virtue of its sovereignty, in trust for all the people."  Art. X, § 11, Fla. Const.

"[E]ven when the title [to the submerged land] is in private parties, a recovery of possession is subject to the rights of the public in the waters." *Williams v. Guthrie*, 137 So. 682, 684–85 (Fla. 1931).  A "'common thread' in the caselaw is 'that the rights of the public are superior to those of private landowners—whether riparian owners or submerged land owners.'"  *Herbits v. Bd. of Trs. of Internal Improvement Tr. Fund*, 195 So. 3d 1149, 1157 (Fla. 1st DCA 2016) (quoting *5F, LLC*, 142 So. 3d at 946).

The submerged land owner argues the Public Trust Doctrine does not provide a riparian right or other legal basis for the upland owner to retain the dock upon its submerged land without its consent.  However, there simply is no consent requirement.  The sovereign continues to have authority to regulate and control the use of privately-owned submerged lands for the benefit of the public—including riparian owners.  Here, the Town of Manalapan enacted ordinances governing the size of docks and boats.  These applicable ordinances were enacted as part of the Public Trust Doctrine because they were made for the public's benefit.

7

In 1996, the prior upland owner requested permission from both the County and the Town of Manalapan to extend the dock that was originally constructed in 1957 to 85 feet, a permissible length according to the zoning ordinances. Upon making the request, the Town of Manalapan held two public hearings in which neighboring property owners had the right to object. The then submerged land owner did not object at either hearing. Because the requested dock extension complied with the Town of Manalapan's regulations, the County and Town issued the permit approving the extension.

The evidence established that the extended dock was built in compliance with the existing regulations. There was no genuine issue as to any material fact and the upland owner was entitled to judgment as a matter of law. The trial court correctly entered summary judgment for the upland owner.

We therefore affirm.[1]

### Cross-Appeal

On cross-appeal, the upland owner argues the trial court erred in denying its motion for sanctions because the submerged land owner's fraud allegations were not made with a good faith effort to verify the allegations. The submerged land owner responds that the trial court did not find its conduct was made in bad faith.

We review a trial court order denying a motion for sanctions for an abuse of discretion. *Williams v. Prepared Ins.*, 274 So. 3d 398, 406 (Fla. 4th DCA 2019).

"The inequitable conduct doctrine permits the award of attorney's fees where one party has exhibited egregious conduct or acted in bad faith." *Moakley v. Smallwood*, 826 So. 2d 221, 224 (Fla. 2002) (quoting *Bitterman*

---

[1] At the hearing on the motion for summary judgment and on appeal, the upland owner suggests that the submerged land owner waived any objection to the dock or is now estopped from objecting. The trial court noted in its order that the submerged landowner's predecessors-in-interest, some apparently controlled by the same principal as controls the submerged landowner, "took title to the submerged land with actual knowledge of the long-extant dock which was built with permission of the Town of Manalapan. Therefore, the [submerged land owner] acquired title subject [the upland owner's] littoral rights which include the preservation of its dock . . . ." But, the trial court does not appear to have relied on waiver or estoppel in entering summary judgment.

*v. Bitterman*, 714 So. 2d 356, 365 (Fla. 1998)).  A trial court has inherent authority in imposing attorney's fees against an attorney; however, this sanction derives from the conclusion that the attorney's conduct was in bad faith "and must be supported by detailed factual findings describing the specific acts of bad faith conduct that resulted in the unnecessary incurrence of attorneys' fees."  *Goldman v. Estate of Goldman*, 166 So. 3d 927, 929 (Fla. 3d DCA 2015) (quoting *Moakley*, 826 So. 2d at 227).

Here, the submerged land owner's initial answer asserted the dock was built without a proper permit and without the prior submerged land owner's consent.  It also alleged the permit was fraudulently obtained because the permit application falsely stated that the prior upland owner also owned the submerged land at the time the dock was built.  The trial court granted the upland owner's motion to dismiss the counterclaim with leave to amend.

The submerged land owner then filed its amended affirmative defenses and counterclaim alleging the same fraud-based allegations, but with slightly more detail.  It did not however provide the permit application.

Ultimately, the parties agreed to an order that allowed the submerged land owner to produce the permit application.  The order further provided that if the submerged land owner did not produce the document, it "stipulate[d] and agree[d] that there are no permit applications in existence in support of the fraud allegations in its Amended Affirmative Defenses and Amended Counterclaim."  No document was ever produced.

At the hearing on the motion for sanctions, the submerged land owner testified that, prior to filing the pleadings, it contacted at least one official from the Town of Manalapan concerning the town's records involving the construction of the dock, but was unable to acquire a fraudulent permit application.  The submerged landowner further testified that ***after*** filing its initial and amended answer, it attempted to verify its fraudulent application allegation.  It was "astonished" to learn that the Town of Manalapan does not require a building permit to construct docks.

Based upon this testimony, the trial court stated it was "patently obvious that [the submerged land owner's] assumptions are erroneous and the allegations were unsupported."  Although the "allegations were ill-advised, and, at the very least negligently made, given the lack of timely fact-research," the trial court concluded there was no evidence of bad-faith, vexatious, wanton, egregious or oppressive conduct, or motivation.

We disagree with the trial court's conclusion that no evidence of bad faith conduct existed. The counterclaim's unsubstantiated allegation— "The dock was built with a permit which was fraudulently obtained, because the permit application falsely stated that the then-owner of [the upland property] also owned [the submerged land]"—*was pled as a <u>fact</u>*. The allegation contained no caveat that it was based on "information and belief," nor any conditional language that it was based on an "assumption." A reasonable person reading the allegation would believe the submerged land owner had viewed or obtained the purported false permit application.

After the trial court granted the upland owner's motion to dismiss the counterclaim with leave to amend, the submerged land owner's amended counterclaim doubled down on its unsubstantiated fraud-based allegations. However, this time, the submerged land owner's verbiage left a clue that its fraud-based allegations may have been unsubstantiated— "The dock was built *either* without a permit *or* with a permit which was fraudulently obtained, because the permit application*, <u>if filed</u>, would have falsely stated* that the then-owner of [the upland property] also owned [the submerged land]." (Emphasis added).

Both allegations were untrue. Rather than simply admitting it had not viewed or obtained the purported false permit application, the submerged land owner extended this stratagem even further by agreeing to an order allowing it to produce the purported false permit application at a later date.

Of course, the submerged land owner did not produce the purported false permit application—because it never existed, as finally revealed at the evidentiary hearing on the upland owner's motion for sanctions. Based on the competent substantial evidence which the upland owner presented at that hearing, in the form of the Manalapan town officials' testimony and affidavits, the submerged land owner either knew or should have known through a cursory public records examination or request that no purported false permit application ever existed, nor was such a permit application ever required. As the trial court found:

> The town does not have an application for a permit to build the dock which is the subject of this dispute. It is unlikely any such paper application ever existed. The town does not require submission of a written application to obtain a permit to build a dock. There exists no evidence that there was any fraud perpetrated or code violated in the procurement of a permit-authority for dock construction or extension.

10

The trial court's factual findings were correct. However, contrary to the trial court's legal conclusion, the submerged land owner's conduct was more than "ill-advised and negligently made." The only reasonable conclusion was that the submerged land owner's repeated allegations were in bad faith, justifying sanctions under the inequitable conduct doctrine.

Based on the foregoing, we reverse the trial court's denial of the upland owner's motion for sanctions. We remand for the trial court to enter an order granting the motion, and set a hearing to determine the amount of the upland owner's attorney's fees and costs incurred in disproving the untrue allegations regarding the purported false permit application.

*Affirmed on the direct appeal; reversed and remanded with instructions on the cross-appeal.*

LEVINE, C.J., and GERBER, J., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

11